IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| KAREN WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 03-3283 |
| | ) | |
| PROFESSIONAL BUSINESS SERVICES | ) | |
| OF CENTRAL ILLINOIS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR SUMMARY JUDGMENT

Defendant Professional Business Services of Central Illinois, Inc. by and through its attorneys Wolfson & Papushkewych LLP hereby moves this Honorable Court under Federal Rule of Civil Procedure 56 to enter summary judgment in favor of Defendant as to Counts I and II of Plaintiff's Complaint.  In support of this Motion, Defendant submits and attaches the Affidavits of Charles E. Neal, M.D., Thomas C. Dickerson and Denis Moja and the deposition transcript of Thomas C. Dickerson together with Exhibit 1 and states as follows:

### (a)  Introduction

1.  Rule 56 of the Federal Rule of Civil Procedure allows a defendant to move for a summary judgment as to any claim after twenty days have elapsed in the action.  Pursuant to this Court's Order, this Motion for Summary Judgment is to be filed on December 6, 2004.

2.  Defendant Professional Business Services of Central Illinois, Inc. ("PBS") is entitled to summary judgment as to Counts I and II.  In each of those counts, Plaintiff alleges that PBS is an employer within the meaning of Section 101(4) of the Family and Medical Leave Act ("FMLA").

3.  The FMLA defines employee as "any person engaged in commerce or in an industry activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding year." 29 U.S.C. §2611(4)(A)(i).

4.  At all times relevant to this Complaint, PBS employed fewer than 50 employees.

5.  PBS is not a single employer with Clinical Radiologists, S.C. ("Clinical Radiologists") for purposes of the FMLA under the test enunciated by the Seventh Circuit in *Papa v. Katy Industries, Inc*.

6.  PBS is not a single employer with Clinical Radiologists for purposes of the FMLA under the "integrated employer" test set forth by the Department of Labor because it does not have common management, there is no interrelationship between operations, there is no centralized control of labor relations, and the degree of common ownership and financial control is insufficient to meet the "integrated employer" test.

7.  Even if PBS and Clinical Radiologists were deemed to be integrated, the two corporations are not an employer with 50 employees under the FMLA because the 15 director-shareholder physicians of Clinical Radiologists cannot be counted as employees to satisfy the jurisdictional minimum under the FMLA.

### (b)  Statement of Undisputed Facts

1.  PBS is a corporation which is in the business of providing billing services to physicians and physician groups, including Clinical Radiologists (Deposition of Thomas C. Dickerson, pp. 6, 37, hereinafter "Dickerson Dep.").

2.  As of May 1, 2003, PBS listed 19 employees on its payroll (Response to Interrogatory No. 13, p. 2[1]); PBS does not employ any physicians (Affidavit of Thomas C. Dickerson, ¶15, hereinafter "Dickerson Aff.").

3.  PBS is incorporated as an Illinois corporation under the Business Corporation Act of 1983.  It has adopted Articles of Incorporation and bylaws governing the operations of PBS, files its own corporate annual reports with the Illinois Secretary of State, holds annual meetings and other meetings of Board members and shareholders as required or necessary, maintains a current corporate minute book of its corporate activities, and otherwise complies with statutory requirements for an Illinois corporation (Dickerson Aff., ¶3).

4.  Clinical Radiologists is a medical service corporation organized under the Medical Corporation Act (805 ILCS 15/1, *et seq.*) which employs physicians specializing in radiology who provide radiology services to patients (Affidavit of Charles E. Neal, M.D., ¶2, hereinafter "Neal Aff.").

5.  As of May 1, 2003, Clinical Radiologists listed 37 employees on its payroll, 28 of whom were radiologists (Response to Interrogatory No. 13, p. 1).

6.  Of the 28 radiologists employed by Clinical Radiologists on May 1, 2003, 23 were shareholders and 15 were members of the Board of Directors (Response to Interrogatory Nos. 3 and 6).

7.  The Medical Corporation Act requires that all of the officers, directors and shareholders of a medical corporation be persons licensed to practice medicine and prohibits any

---

[1]Answers and Objections to Plaintiff's First Set of Interrogatories and Requests to Produce regarding Defendant's Status as an Employer and the attachments were attached as Exhibit 1 to the deposition transcript of Thomas C. Dickerson; in this Motion, the attachments to the Answers will be referred to by their designation "Response to Interrogatory".

person who is not licensed to have any part in the ownership, management or control of a medical corporation (805 ILCS 15/13).

8.  All officers, shareholders and directors of Clinical Radiologists are physicians and only the shareholders participate in the management or control of Clinical Radiologists (Neal Aff., ¶3).

9.  Clinical Radiologists is incorporated as a medical corporation.  It has adopted Articles of Incorporation and bylaws governing its operations, files corporate annual reports with the Illinois Secretary of State, holds annual meetings and other meetings as required or as needed, maintains a current corporate minute book of its corporate activities, and otherwise complies with statutory requirements for a medical corporation which includes management by physicians only (Neal Aff., ¶4; Dickerson Aff., ¶4).

10.  Each corporation files its own state and federal tax returns and pays its own taxes (Neal Aff., ¶5); for tax purposes, Clinical Radiologists is a personal service corporation while PBS is an S corporation (Affidavit of Denis Moja, ¶5, hereinafter "Moja Aff."; Dickerson Aff., ¶4).

11.  Each corporation has its own separate bank accounts, writes its own checks and pays its own bills (Dickerson Aff., ¶5).

12.  Each corporation has its own accounting system and separate financial statements (Dickerson Aff., ¶6).

13.  Each corporation enters into leases and agreements on its own behalf (Neal Aff., ¶6; Dickerson Aff., ¶7;).

14.  PBS has agreements with its clients, including Clinical Radiologists, for the billing services which it provides; has lease agreements for the space it occupies; has business associate

4

agreements with clients under HIPAA; and has its own agreements with providers of supplies, equipment and services (Dickerson Aff., ¶7).

15. Clinical Radiologists has contracts with the hospitals at which its radiologists provide services, has employment agreements with its physician employees and principal non-physician employees, and has its own agreements with providers of supplies, equipment and services (Neal Aff., ¶6).

16. Each corporation leases and/or occupies its own office space, owns or leases its own equipment, and purchases supplies and equipment for its own operation (Neal Aff., ¶8; Dickerson Aff., ¶7).

17. Employees of Clinical Radiologists use office space located at 701 North First Street, inside Memorial Medical Center, as well as at a variety of facilities at which they provide services; during the relevant time period, PBS offices were located at 944 North First Street, Springfield, Illinois 62702 (Dickerson Dep., 7, 10).

18. The employees of each corporation are governed by separate rules and policies developed and enforced by each separate entity (Neal Aff., ¶9; Dickerson Aff., ¶9).

19. The employees of the corporations do not transfer from one corporation to the other (Dickerson Aff., ¶10).

20. Each corporation is responsible for its own payroll (Dickerson Aff., ¶5).

21. Clinical Radiologists is managed by physicians. Its Board of Directors is elected by the shareholders. The Board elects an Executive Committee to manage the day to day operations of Clinical Radiologists subject to the approval of the Board (Neal Aff., ¶¶10, 14 and 15).

22.  PBS is managed on a day to day basis by the Manager who reports to the Vice President of PBS for approval of major decisions (Dickerson Dep., 21-22).  The Vice President seeks the approval of the President or the Board of Directors, as needed (Dickerson Dep., 19-20).

23.  Twelve of the fifteen PBS shareholders are also shareholders of Clinical Radiologists (Dickerson Dep., 13-14).  Twelve of the twenty-three shareholders of Clinical Radiologists own stock of PBS (Dickerson Dep., 16).

24.  Eleven of the fifteen PBS directors are directors of Clinical Radiologists (Dickerson Dep., 25-26).

25.  Over ¾ of the employees of Clinical Radiologists are physicians (Response to Interrogatory No. 13, p. 1).  Personnel and labor decisions with respect to the physicians are made by the Board of Directors elected by the shareholders of Clinical Radiologists (Neal Aff., ¶9).

26.  Day to day personnel and labor decisions with respect to non-physician employees of Clinical Radiologists are made by the Chief Executive Officer of Clinical Radiologists (Dickerson Dep., 24-25).

27.  Day to day personnel and labor decisions with respect to employees of PBS are made by the Manager of PBS; the decision to fire an employee requires the approval of the Vice President of PBS (Dickerson Dep., 21-23, 28-32).

28.  Each corporation hires its own employees and has policies applicable only to its employees (Dickerson Aff., ¶¶ 9, 11).

29.  Each corporation maintains its own personnel records, advertises for and hires its own employees and screens and tests applicants for employment for positions for that corporation only (Dickerson Aff., ¶11).

30.  There have been no transfers of employees between PBS and Clinical Radiologists and no promotions or transfers of employees from one entity to the other (Dickerson Aff., ¶10).

31.  Thomas C. Dickerson is employed full time by Clinical Radiologists as Chief Executive Officer; he is not a shareholder, director or officer of Clinical Radiologists (Dickerson Dep., 9).

32.  Thomas C. Dickerson is a shareholder of PBS, the Vice President/Secretary of PBS and is a member of the PBS Board of Directors (Dickerson Dep., 6, 13).

33.  A decision to approve or disapprove the termination of a PBS employee made by Thomas C. Dickerson is made in his capacity as Vice President of PBS (Dickerson Aff., ¶14).

34.  28 physicians were employed by Clinical Radiologists on May 1, 2003, 23 of the physicians were shareholders and 15 of the shareholders were also directors (Response to Interrogatory No. 3, No. 6, page 1 and No. 13, page 1).

35.  Clinical Radiologists is governed by a Board of Directors.  The Board consists of 15 members each of whom is elected for a one year term by the shareholders.  The election of a director requires a quorum of 2/3 of the outstanding shares of the corporation; election of a director requires a majority of the shares represented in person or by proxy (Neal Aff., ¶¶13, 14).

36.  Shareholders are eligible to run for membership on the Board of Directors one year after becoming a shareholder in Clinical Radiologists (Neal Aff., ¶13).  All shareholders of Clinical Radiologists on May 1, 2003 had been shareholders for at least one year (Dickerson Aff., ¶16).

37.  The Board of Directors elects the members of the Executive Committee, which committee meets regularly to address the operational issues of Clinical Radiologists.  Election to the Executive Committee requires a majority vote of the Board (Neal Aff., ¶15).

7

38.  The shareholders govern themselves through their elected Board members. Although operational decisions are assigned to the Executive Committee, 2/3 of Clinical Radiologists' Board may amend or terminate any plan or policy which the Executive Committee adopts which applies to compensation, vacation, coverage responsibilities, continuing medical education requirements, disability, sick leave policy or any other plan or policy which is intended to establish the principles through which the physicians employed by the corporation are compensated (Neal Aff., ¶¶13, 15).

39.  Shareholder radiologists of Clinical Radiologists can be terminated only by a 2/3 vote of the corporation's directors (Neal Aff., ¶13).

40.  Shareholder radiologists of Clinical Radiologists do not have supervisors.  The shareholder radiologists have their schedules set by Clinical Radiologists in order to assure the presence of radiologists at the work places where Clinical Radiologists has obligations to provide services.  The shareholder radiologists also have their work reviewed on a regular basis as part of the peer review process and other hospital-related review requirements.  However, the work performed by each shareholder radiologist is not routinely subject to the review of other radiologists and the shareholder radiologists do not have supervisors (Neal Aff., ¶11).

41.  Shareholders of Clinical Radiologists receive compensation characterized as salary or bonuses; however, these characterizations are based upon the assumption that the radiologists satisfy the criteria set by the Board of Directors.  If the shareholder does not, then the payment is deemed to be an advance or a loan which the shareholder is required to repay (Moja Aff., ¶8).

42.  Each shareholder of Clinical Radiologists shares in its profits through a formula determined by the Board of Directors that first provides for the payment of all expenses and then distributes all of the remaining cash to the shareholders (Moja Aff., ¶7).

43.  If Clinical Radiologists experiences losses, the employees other than its shareholders who are employees will continue to receive their full salaries, however, the compensation of those employees who are shareholders of Clinical Radiologists may be reduced or eliminated to permit the corporation sufficient cash to satisfy the losses (Dickerson Aff., ¶17).

44.  By law Clinical Radiologists is required to satisfy its liabilities before distributions are made to its shareholders.  805 ILCS 5/9.10(c).  Therefore, in the event of a judgment against Clinical Radiologists, the compensation that would otherwise be allocated and distributed to the shareholders according to the corporation's cash distribution formula may be used to satisfy the judgment and shareholder cash distributions may be offset or eliminated.  Non-shareholder employees of Clinical Radiologists will continue to receive their full salaries (Dickerson Aff., ¶18).

45.  Restrictions on the issuance and transferability of Clinical Radiologists' shares of stock is different from the corporate attribute of free transferability of shares of stock and quite similar to the restrictions customarily imposed on partnership interests (Moja Aff., ¶9).

46.  The revenue distribution policy developed by Clinical Radiologists is substantially equivalent to the revenue distribution policies adopted by many partnerships (Moja Aff., ¶5).

47.  If a shareholder of Clinical Radiologists receives payments in excess of the payments he should receive as a result of the work units he has earned, he is obligated to repay the amount of such excess to Clinical Radiologists just as a partner who overdraws his drawing account is obligated to repay the amount of the excess draw to the partnership (Moja Aff., ¶8).

### (c)  Argument

**A. PBS is not an employer under the test enunciated in *Papa v. Katy Industries, Inc.***

In *Papa v. Katy Industries, Inc.,* 166 F.3d 937, 940-942 (7th Cir. 1999), the Seventh

Circuit held in a Title VII case that affiliated entities should only be considered a single

employer if (1) state corporate law principles would allow the court to "pierce the corporate veil"

and disregard the corporate separation of the entities; (2) the affiliated entities were intentionally

splintered into small entities, with few employees each, to avoid being subject to federal anti-

discrimination laws; or (3) a parent corporation directed a subsidiary to commit unlawful

discrimination.  Although this Court has previously ruled that the test enunciated by the Seventh

Circuit in *Papa* does not apply to the FMLA (Order of March 10, 2004), PBS respectfully urges

this Court to reconsider its ruling and apply *Papa* to the issue of whether PBS is an employer

under the FMLA.

Although *Papa* addressed claims under the federal antidiscrimination laws, the Seventh

Circuit has announced that the principles enunciated in that case have broad applicability.  In

*Worth v. Tyer,* 276 F.3d 249, 260 (2001), the Seventh Circuit stated that "nothing in *Papa* limits

its application to the tiny employer context.  Rather . . . the principles governing affiliate liability

should apply 'across the full range of American law' unless a particular statute provided an

alternative test."

Illinois courts have followed the Seventh Circuit's pronouncement and have applied the

*Papa* test to both discrimination and non-discrimination statutes.  In *Coleman v. ANR-Advance

Transportation Co.,* 2001 WL 77046 (N.D. Ill. 2001), the court used the *Papa* analysis in an

employment discrimination case noting the Seventh Circuit's admonition that the principles

governing affiliate liability should not "vary from statute to statute, unless the statute, or the

particular policy that animates the statute, ordains a particular test.  *Papa,* 166 F.2d at 941."  See

also *Jefferson v. Ingersoll Int'l, Inc.*, 2000 WL 28256, at *7 (N.D. Ill. 2000).  Several Illinois

district courts have cited *Papa* as the appropriate test for courts to apply in FMLA cases. *Chavez v. Lawrence & Frederick, Inc.*, 1999 WL 803374, at *3-4 (N.D. Ill. 1999); *Diggs v. Dynegy, Inc.*, 2003 WL 22794558 (N.D. Ill. 2003); *Diangi v. Valex,* 56 F.Supp.2d 1023, 1024 (N.D. Ill. 1999). The *Papa* test has also been applied to other statutes. In *Mohr v. WCKG, Inc.*, 2000 WL 1535991 (N.D. Ill. 2000), the district court applied *Papa* to an alleged violation of federal and state wiretapping laws, noting the Seventh Circuit's intent to have the affiliate liability principles apply "across the full range of American law."

The Seventh Circuit in *Papa* described its new approach to the determination of affiliate liability as "applying across the full range of American law" except that the integrated employer test would continue to be applied to the determinations of the National Labor Relations Board of (1) whether it has jurisdiction over an employer and (2) what an appropriate bargaining unit is. *Papa*, 166 F.2d at 942. The rationale articulated by the Seventh Circuit for its abrogation of the integrated employer test in the context of the anti-discrimination statutes is equally applicable to the determination of whether an employer who has fewer than the statutory minimum number of employees is covered by the FMLA because of its connections to another employer. PBS respectfully requests that the Court reconsider its ruling that *Papa* does not apply to FMLA cases and find as a matter of law that since there are no allegations in the Complaint and there is an absence of evidence to show (1) that conditions are present for piercing the corporate veil, or (2) the affiliated entities were intentionally splintered into small entities, with few employees each, to avoid being subject to federal anti-discrimination laws; or (3) that a parent corporation directed a subsidiary to commit unlawful discrimination, that summary judgment under Fed.R.Civ.P. 56(c) [or judgment on the pleadings under Fed.R.Civ.P. 12(c)], should be entered in favor of PBS finding that it is not an employer for purposes of the FMLA.

**B.**     **PBS is not an employer under the "integrated employer" test.**

The "integrated employer" test set forth in the regulations of the Department of Labor requires examination of four factors to determine whether two employers are integrated. The four factors are (1) common management; (2) interrelation of operations; (3) centralized control of labor relations; and (4) common ownership/financial control. 29 CFR 825.104(c)(2). Analyzing the relationship of PBS and Clinical Radiologists using these factors shows that PBS and Clinical Radiologists are separate entities and not parts of a single employer.

One of the factors to be considered is common management. Day to day operations of PBS are controlled by the manager of PBS, who has no role whatsoever in Clinical Radiologists (Dickerson Dep., 43-44). The PBS manager has the authority to hire PBS employees; he also has the authority to fire PBS employees with the approval of the Vice President of PBS, Thomas C. Dickerson. In his capacity as Vice President, Dickerson does not become involved in the day to day operational decisions and employment decisions made by the PBS manager; he only becomes involved in approving employee terminations and in major policy decisions (Dickerson Dep., 28-31, 34). Dickerson consults on matters of major importance with the president of PBS or may take the matter to the PBS Board of Directors, if needed (Dickerson Dep., 34).

Thomas C. Dickerson is employed full time by Clinical Radiologists as its Chief Executive Officer (Dickerson Dep., 9). In that capacity, he does not control decision making relating to physician employees but does control the day to day operations of the non-physician employees of Clinical Radiologists (Neal Aff., ¶9; Dickerson Dep., 24-25).

In *Hukill v. Auto Care, Inc.,* 192 F.3d 437, 443 (4th Cir. 1999), the court in evaluating the factor of common management looked to "who had control of the day to day operations of the business" and "who had the authority to hire and fire employees." In the instant case, the PBS

manager made the day to day decisions pertaining to the employees at PBS.  The PBS manager also exercised control over matters related to employment at PBS, except that the manager was required to obtain approval for termination of an employee from the Vice President.  Although termination of employees required the approval of Dickerson in his role as Vice President of PBS, this fact is insufficient to satisfy the common management requirement.

Officers and directors holding positions with several entities can and do "change hats" to represent the two corporations separately.  *Lusk v. Foxmeyer Health Corporation*, 129 F.2d 773, 779 (5th Cir. 1997).  When Dickerson acts to approve or disapprove a decision by the manager of PBS to fire an employee, he does so in his position as the Vice President of PBS (Dickerson Aff., ¶14).  With the numerous employment law issues potentially involved in any termination, requiring review of a termination decision by a PBS officer is not evidence of control or decision making by Clinical Radiologists; rather it reflects the exercise of prudence by PBS, an intent and effort to insure compliance with legal requirements and a desire to protect the corporation.  The fact that Dickerson "wears two hats" as Vice President of PBS and Chief Executive Officer of Clinical Radiologists does not permit the inference that his approval of termination decisions made on behalf of PBS were in fact decisions made by Clinical Radiologists.  There is a "strong presumption" that a parent company is not the employer of its subsidiary's employees and courts have found otherwise only in extraordinary circumstances.  *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1362 (10th Cir. 1993).  Under these circumstances, the common management factor favors a finding of no integrated employer relationship between PBS and Clinical Radiologists.

The second factor to be considered is the interrelationship of operations.  The operations of PBS and Clinical Radiologists are not interrelated.  The facts show that each company operates separately and distinctly.  Each organization provides wholly distinct services (Neal

Aff., ¶2; Dickerson Dep., 6).  Each company also operates at separate locations, files separate tax

returns, holds separate shareholder and Board of Directors meetings, conducts separate banking

operations, purchases goods separately, enters into separate lease agreements and contracts, is

not managed day to day by the same individuals and does not share office space (Neal Aff., ¶¶3,

4, 5, 6, 7, 8, 9, 10; Dickerson Aff., ¶¶3, 4, 5, 7, 8; Dickerson Dep., 21-22).  In light of this

evidence, this prong of the test favors the conclusion that PBS was not an integrated employer

with Clinical Radiologists.

   The third factor, centralized control of labor operations, also favors the conclusion of no

integration.  The court in *Frank v. U.S. West, Inc.,* 3 F.3d at 1363 stated that in order to satisfy

the control prong, a parent must control the day to day employment decisions of the subsidiary.

There is nothing to support a finding that the control of labor operations was centralized.  PBS

had no role in the labor relations of Clinical Radiologists; no power to hire, fire or supervise

employees of Clinical Radiologists; and no power to control the work schedules of the

employees of Clinical Radiologists (Dickerson Aff., ¶12).  Conversely, Clinical Radiologists had

no role in the labor relations of PBS; it had no power to hire, fire or supervise PBS employees;

and no power to control the work schedules of PBS employees (Dickerson Aff., ¶13).  In *Hukill*

*v. Auto Care, Inc.,* 192 F.3d at 444, the court found that in the absence of the power to control

labor relations, hire, fire, supervise or control the work schedules of employees, there was no

showing of centralized control of labor relations.  As in *Hukill v. Auto Care, Inc.,* in the instant

case this prong of the four part test weighs heavily in favor of a finding of no integration.

   The last factor to be considered is common ownership and financial control.  PBS has 15

shareholders, 12 of whom are also shareholders of CR. (Dickerson Dep., 13).  PBS has 15

members on its Board of Directors, 11 of whom are also on the Board of Directors of Clinical

Radiologists (Dickerson Dep., 25-26).  However, the fact that the two corporations share a number of common directors and shareholders is not sufficient to allow the corporations to be considered a single employer.  *Rogers v. Sugar Tree Products, Inc.*, 7 F.3d 577, 583 (7th Cir. 1994) *abrogated on other grounds by Papa v. Katy Industries,* 166 F.3d at 939-940*; Hukill v. Auto Care, Inc.,* 192 F.3d at 444.  Even where two corporations share the one hundred percent ownership and identity of directors and officers, that ownership is not, in and of itself, sufficient to show that the two corporations constitute a single employer.  *Johnson v. Flowers Industries, Inc.,* 814 F.2d 978, 982 (4th Cir. 1987).  More is needed to show that they are "interrelated to such a degree that departure from their normal separate existence is warranted."  *Rogers v. Sugar Tree Products, Inc.,* 7 F.3d at 583.  In *Hukill v. Auto Care, Inc.,* 192 F.3d at 439, there were two principal owners:  one owned 100% of one company's stock and 50% of the stock of the seven other companies, was the President, chief executive officer and director of all eight corporations; the second was the owner of the remaining 50% stock of the seven corporations as well as the other director of the seven corporations (the first owner's wife was the remaining director of one of the corporations).  The court found that this common, although not identical, ownership was insufficient to establish that the eight corporations were an "integrated employer."

The showing required to find single employer status has been described as "highly integrated with respect to ownership *and* operations."  *Rogers v. Sugar Tree Products, Inc.*, 7 F.3d at 583 (emphasis in original; citations omitted).  In *Sharpe v. Jefferson Distributing Co.,* 148 F.3d 676, 678 (7th Cir. 1998) *abrogated on other grounds by Papa v. Katy Industries,* 166 F.3d at 939-940, the Seventh Circuit stated that none of the factors of the integrated employer test was controlling but that all should be considered in order to understand whether the corporations are "highly integrated both with respect to ownership *and* operations."  In that case,

15

the Court concluded that although the two employers were joined at the ownership level, they were distinct at the operational level and therefore could not be found to be a single employer. *Id* at 678-679.  Similarly, in *Rogers v. Sugar Tree Products, Inc.,* 7 F.3d at 583-584, the Seventh Circuit held that two corporations sharing the same owner were not a single employer despite their high integration with respect to ownership because their operations were unrelated, the two employers had distinct businesses, had their own records, plants, equipment and facilities, and had little common management.

The Department of Labor regulation setting forth the four factors of the integrated employer test states that the determination of whether separate entities are an integrated employer is not to be made by the application of any single criterion but rather the entire relationship is to be viewed in its totality.  29 C.F.R. §825.104(c)(2).  Viewing the relationship between PBS and Clinical Radiologists in its totality requires a finding that PBS is not a single employer with Clinical Radiologists.  Each corporation provides distinct services, each corporation is separately incorporated under different Illinois statutes, each corporation hires its own employees, has its own employment policies, maintains its own personnel records, advertises for its own employees, and screens and tests applicants for employment for positions for that corporation only.  There have been no transfers of employees between PBS and Clinical Radiologists and no promotions of employees from one entity to the other.  Each corporation files its own state and federal tax returns, pays its own taxes, is incorporated under separate statutes for tax purposes, has its own bank accounts, writes its own checks and pays its own bills, has its own accounting system and separate financial statements, and enters into leases and agreements on its own behalf.  Each corporation leases or occupies its own separate office space and purchases supplies and equipment for its own operations.  Personnel and labor decisions

16

with respect to the employees of PBS are made by PBS and with respect to the employees of Clinical Radiologists are made by Clinical Radiologists.

The facts in this case show that as a matter of law Plaintiff cannot establish that PBS is an integrated employer with Clinical Radiologists and therefore cannot show that PBS is an employer subject to the FMLA.  PBS is therefore entitled to summary judgment.  Fed.R.Civ.P. 56(c).

**C.  PBS and Clinical Radiologists jointly do not employee 50 employees.**

Even if PBS and Clinical Radiologists are deemed "integrated," the two entities do not jointly employ 50 employees because the director-shareholders of Clinical Radiologists are not employees.  "Employee" is defined in the FMLA according to the definition provided in the Fair Labor Standards Act which states that "employee" means "any individual employed by an employer."  29 U.S.C. §203(e)(1).  In construing the identical definition of "employee" in the Americans with Disabilities Act, the Supreme Court in *Clackamas Gastroenterology Associates, P.C. v. Wells,* 538 U.S. 440, 444-445, 123 S.Ct. 1673, 155 L.Ed.2d 615 (2003) noted that when Congress has used the term "employee" without defining it, the court has concluded that Congress intended to describe "the conventional master-servant relationship as understood by common-law agency doctrine."

In *Clackamas v. Wells,* the Supreme Court was faced with the question of whether, in the context of a discrimination suit filed against a medical clinic, the director-shareholder physicians could be counted as employees for purposes of determining whether the professional corporation was subject to the Americans with Disabilities Act.  538 U.S. at 442.  The court set forth the following six factor inquiry to determine whether a director-shareholder is an employee:  (1) whether the organization can hire or fire the individual or set the rules and regulations of the

17

individual's work; (2) whether and, if so, to what extent the organization supervises the

individual's work;  (3) whether the individual reports to someone higher in the organization; (4)

whether and, if so, to what extent the individual is able to influence the organization; (5) whether

the parties intended that the individual be an employee, as expressed in written agreements or

contracts; and (6) whether the individual shares in the profits, losses, and liabilities of the

organization.  538 U.S. at 449-450.  The application of these factors to the director-shareholders

of Clinical Radiologists shows that they are not employees who should be counted for purposes

of the FMLA.

        The structure of Clinical Radiologists is designed to provide each shareholder with the

ability to influence the organization by voting on issues reserved to the shareholders, voting for

members to the Board of Directors, running for the position of director and running to be a

member of the corporation's Executive Committee. There are 23 shareholders of Clinical

Radiologists.  The shareholders govern themselves through their elected Board members.  15 of

the shareholders are elected to the Board of Directors.  The Board consists of 15 members, each

of whom is elected for a one year term by the shareholders (Neal Aff., ¶14).

        The governing body of Clinical Radiologists, its Board of Directors, elects members to

the Executive Committee.  The Executive Committee addresses day to day operational issues

and election to the Executive Committee requires a majority vote of the Board (Neal Aff., ¶15).

Although operational decisions are assigned to the Executive Committee by the Board of

Directors, 2/3 of the Clinical Radiologists' Board may amend or terminate any plan or policy

that the Executive Committee adopts which applies to compensation, vacation, coverage

responsibilities, continuing medical education requirements, disability, sick leave policy, or any

other plan or policy which is intended to establish the principles through which the physicians

employed by the corporation are compensated.  Furthermore, the Board by a 2/3 vote can reassume any right to act which has been granted to the Executive Committee and by a 2/3 vote can discontinue the existence of the Executive Committee and reassume responsibility for all day to day activities that it has delegated (Neal Aff., ¶15).

Furthermore, the shareholder radiologists of Clinical Radiologists can be terminated only by a 2/3 vote of the corporation's Board (Neal Aff., ¶13).  Thus, although the organization can, in fact, fire an individual, an employee who is a shareholder can only be fired by a vote of 2/3 of the 15 member Board of Directors.

The shareholders of Clinical Radiologists do not have supervisors and do not report to someone higher in the organization.  All radiologists have their schedules set by Clinical Radiologists in order to assure the presence of radiologists at the work places where the group has obligations to provide services.  Furthermore, the shareholders have their work reviewed on a regular basis as part of the peer review process for physicians and other hospital related review requirements.  However, the work performed by each shareholder is not routinely subject to the review of other radiologists and the shareholders do not have supervisors, nor do the shareholders report to anyone higher in the organization (Neal Aff., ¶11).

Furthermore, the shareholders of Clinical Radiologists share in the profits, losses and liabilities of that organization.  Unlike other employees of Clinical Radiologists, shareholders share in the profits through a formula determined by its Board of Directors.  This formula first provides for the payment of all expenses and then distributes the available cash to the shareholders (Moja Aff., ¶7).  If Clinical Radiologists experiences losses, the employees who are not shareholders will continue to receive their full salaries, however, the compensation of those employees who are shareholders may be reduced or eliminated to permit the corporation

19

sufficient cash to satisfy the losses (Dickerson Aff., ¶17).  Furthermore, in the event of a judgment against Clinical Radiologists, the compensation that would otherwise be allocated and distributed to the shareholders according to the corporation's cash distribution formula may be used to satisfy the judgment and all shareholder cash distributions may be offset or eliminated until the judgment is satisfied.  Non-shareholder employees of Clinical Radiologists will continue to receive their full salaries (Dickerson Aff., ¶18).  Therefore, the revenue distribution policy developed by Clinical Radiologists is substantially equivalent to the revenue distribution policies adopted by many partnerships.

Furthermore, the central corporate attribute that provides all shareholders with the freedom to transfer their shares of stock to the person or entity of their choice is stripped from the stock owned by Clinical Radiologists' shareholders.  Restricted transferability of ownership interests such as this restriction imposed on Clinical Radiologists' shareholders is a customary attribute of partnership interests (Moja Aff., ¶9).

The Supreme Court in *Clackamas*, 538 U.S. at 448, looked to the common law definition of the master-servant relationship in order to determine whether shareholders and directors who are also employed by a business are sufficiently under the control of the employer to constitute servants in a master-servant relationship.  The Supreme Court stated that the principal guidepost that should be followed is control.  Using this guidepost, it is clear that the shareholders of Clinical Radiologists would not fall within the Supreme Court's definition of an employee.  Shareholders cannot be fired except by a 2/3 vote of the Board of Directors, their work is not supervised, they do not report to someone higher in the organization, they are able to influence the organization and they share in the profits, losses and liabilities of the organization.

Furthermore, as the Supreme Court stated in *Clackamas,* 538 U.S. at 450, an employer is the person or group of persons, who owns and manages the enterprise. The employer can hire and fire employees, can assign tasks to employees and supervise their performance and can decide how the profits and losses of the business are to be distributed. The Board of Directors of Clinical Radiologists is possessed of each and all of these powers. Therefore, the director-shareholders are not sufficiently under the control of Clinical Radiologists to constitute servants or employees and the group of shareholders that constitutes the Board of Directors of Clinical Radiologists manages the business of Clinical Radiologists and therefore for purposes of this analysis are proprietors and not employees.

The facts in this case show that as a matter of law Plaintiff cannot establish that Clinical Radiologists and PBS together have 50 employees and therefore cannot show that PBS is an employer subject to the FMLA. PBS is therefore entitled to summary judgment. Fed.R.Civ.P. 56(c).

Respectfully Submitted,

PROFESSIONAL BUSINESS SERVICES
OF CENTRAL ILLINOIS, INC., Defendant

s/Gerri Papushkewych
Gerri Papushkewych, Bar No. 11240
Attorney for Defendant
Wolfson & Papushkewych LLP
2904 Greenbriar Drive, Suite D
Springfield, IL  62704
Telephone:  (217)787-3210
Telefax:  (217)787-1752
E-mail:  gerrip@wpllplaw.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 6, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Bradley B. Wilson
Gates, Wise & Schlosser, P.C.
1231 South Eighth Street
Springfield, IL  62703

s/Gerri Papushkewych
Gerri Papushkewych, Bar No. 11240
Attorney for Defendant
Wolfson & Papushkewych LLP
2904 Greenbriar Drive, Suite D
Springfield, IL  62704
Telephone:  (217)787-3210
Telefax:  (217)787-1752
gerrip@wplllaw.com