**E-FILED**
Monday, 20 December, 2004  12:31:24 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATED DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | | |
|---|---|---|---|
| **KAREN WATKINS,** | ) | | |
| | ) | | |
| **Plaintiff,** | ) | | |
| | ) | | |
| **v.** | ) | **No.** | **03-3283** |
| | ) | | |
| **PROFESSIONAL BUSINESS SERVICES** | ) | | |
| **OF CENTRAL ILLINOIS, INC.,** | ) | | |
| | ) | | |
| **Defendants.** | ) | | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Plaintiff, KAREN WATKINS, by and through her attorneys, GATES, WISE & SCHLOSSER, P.C., and for her Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, states as follows:

**INTRODUCTION**

Defendant, Professional Business Services of Central Illinois, Inc. ("PBS") has presented three separate arguments in support of its Motion for Summary Judgment.  The first of these arguments is that PBS is not an employer under the test enunciated in *Papa v. Katies Industries, Inc.,* 166 F.3d 937 (7th cir. 1999).  However, as that test is not applicable to the present matter.

The second argument offered by Defendant is that PBS is not an employer under the integrated employer test.  This argument is without merit.  PBS and Clinical Radiologists S.C. share common management, interrelation between operations, centralized control of labor relation and

1

common ownership and financial control. Thus, PBS and Clinical Radiologists should be found to be an integrated employer.

The final argument offered by Defendant is that PBS and Clinical Radiologists are not an employer under the FMLA because the 15 director shareholder physicians of Clinical Radiologists cannot be counted as employees to satisfy the jurisdictional minimum under the FMLA. However, the facts show that PBS employed 19 individuals at the time of Plaintiff's discharge. The facts further show that, at the very least, Clinical Radiologists has 32 "employees." Thus, PBS and Clinical Radiologists jointly employed at least 51 employees at the time of Karen Watkins discharge, a number in excess of the FMLA jurisdictional minimum of 50 employees.

## RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACT

1. **Undisputed Material Fact.**

Plaintiff does not dispute the following facts:

1 through 7, 9 through15, 17*, 20 through 22, 23**, 24 through 26, 31 through 38, 41 through 47.

* Plaintiff qualifies her designation of statement of fact number 17 as "undisputed" by noting that Tom Dickerson performs both his duties as Vice President/Secretary of PBS and his duties as CEO of Clinical Radiologists out of the same office which is located in Quincy, Illinois. *Dickerson Dep. p. 7-10.*

** Plaintiff qualifies her designation of statement of fact number 23 as "undisputed" by noting

the following: 1) PBS labor relations policies were implemented by Fred Williamson, the PBS

Billing Manager. *Dickerson Dep. p. 28; Defendant's Response to Plaintiff's Interrogatory No. 8.;*

2) Fred Williamson had to obtain the approval of Tom Dickerson for labor and employment

decisions such as the hiring of permanent staff, the termination of permanent staff, the change of any

labor relations policy that had previously been implemented. *Dickerson Dep. p. 28-29;* 3) Fred

Williamson's role in implementing PBS labor policies consisted of hiring temporary workers and

making sure that PBS employees came to work each day. *Dickerson Dep. p. 28-29;* 4) Fred

Williamson did not typically create any labor policy on his own. *Dickerson Dep. p. 30;* and, 5) The

creation of new PBS labor policies were typically handled by Tom Dickerson, though Mr. Dickerson

would discuss major changes to PBS labor policy with the President of PBS. *Dickerson Dep. p. 30.*

**2. Material Facts Claimed To Be Disputed.**

8.      All management matters related to Clinical Radiologists' non-physician employees,

such as employment and personnel issues, are handled by Tom Dickerson, the CEO of Clinical

Radiologists. *Dickerson Dep. p. 22-23; Defendant's Response to Plaintiff's Interrogatory No. 6.*

Defendant identified those officers and employees of PBS and Clinical Radiologists who were

physicians in its Answers to Plaintiff's Interrogatories; Tom Dickerson is not designated as a

physician in Defendant's Answer to Plaintiff's Interrogatories. *Dickerson Dep. p. 22-23;*

*Defendant's Responses to Plaintiff's Interrogatories No. 2, No. 5 and No. 13.*

16.      Tom Dickerson performs both his duties as Vice President/Secretary of PBS and his

duties as CEO of Clinical Radiologists out of the same office which is located in Quincy, Illinois.

*Dickerson Dep. p. 7-10.*

18.      The creation of new PBS labor policies were typically handled by Tom Dickerson,

though Mr. Dickerson would discuss major changes to PBS labor policy with the President of PBS. *Dickerson Dep. p. 30.* Tom Dickerson was also the individual who formulated and implemented labor relations policies regarding non-physician employees for Clinical Radiologists. *Dickerson Dep. p. 34-37; Defendant's Response to Plaintiff's Interrogatory No. 9.*

19.    Tom Dickerson is the President/Secretary of Professional Business Services of Central Illinois, Inc.("PBS"). *Dickerson Dep. p. 6.* Tom Dickerson is also the Chief Executive Officer of Clinical Radiologists, S.C..("Clinical Radiologists"). *Dickerson Dep. p.* 9. Tom Dickerson did not go through separate interviews for the position of Vice President/Secretary of PBS and the position of Chief Executive Officer for Clinical Radiologists. *Dickerson Dep. p. 33.* Tom Dickerson was hired by Clinical Radiologists in June, 1998. *Dickerson Dep. p.* 32. When Tom Dickerson was hired as the CEO of Clinical Radiologists, his initial employment contract with Clinical Radiologists stated that he would also be responsible for overseeing PBS. *Dickerson Dep. p. 33-34.* Tom Dickerson receives a salary, not including bonuses, of $175,000.00 for acting as CEO of Clinical Radiologists. *Dickerson Dep. p. 10-11.* Tom Dickerson receives no additional salary for acting as Vice President/Secretary of PBS. *Dickerson Dep. p. 8.* Tom Dickerson performs both his duties as Vice President/Secretary of PBS and his duties as CEO of Clinical Radiologists out of the same office which is located in Quincy, Illinois. *Dickerson Dep. p. 7-10.*

Kim Sparrow, a Clinical Radiologists employee, has specified duties regarding the implementation of PBS personnel actions. *Dickerson Dep. p. 39 - 40; Defendant's Response to Plaintiff's Interrogatory No. 12.* Kim Sparrow's specified duties include assisting with human resource functions for PBS and the explanation of PBS's benefits to PBS employees. *Dickerson Dep. p. 40.* For some of the duties she performs for PBS, Kim Sparrow receives no other pay other than

4

the salary she receives from Clinical Radiologists.  *Dickerson Dep. p.  41-42.*

Darrel Anderson, the President of PBS, is a shareholder in both PBS and Clinical Radiologists and is also a member of Clinical Radiologists' Board of Directors and a member of Clinical Radiologists' Executive Committee.  *Dickerson Dep. p. 14, 18; Defendant's Responses to Plaintiff's Interrogatory No.5 and No. 6.*

As of May, 2003, 11 of the 15 individuals who sat on Clinical Radiologists' Board of Directors also sat of the Board of Directors of PBS.  *Dickerson Dep. p.  25-26; Defendant's Responses to Plaintiff's Interrogatories No. 2 and No.6.*

Clinical Radiologists is managed by an Executive Committee, the members of which are elected by Clinical Radiologists Board of Directors.  *Dickerson Dep. p. 22-23; Defendant's Response to Plaintiff's Interrogatory No. 6.*  Each member of Clinical Radiologists Executive Committee held stock in, and was a member of the Board of Directors of, PBS.  *Dickerson Dep. p. 27; Defendant's Responses to Plaintiff's Interrogatories No. 2 and No. 6.*

27.    PBS labor relations policies were implemented by Fred Williamson, the PBS Billing Manager.  *Dickerson Dep. p.  28; Defendant's Response to Plaintiff's Interrogatory No. 8.*  Fred Williamson had to obtain the approval of Tom Dickerson for labor and employment decisions such as the hiring of permanent staff, the termination of permanent staff and the change of any labor relations policy that had previously been implemented.  *Dickerson Dep. p.  28-29.*  Fred Williams' role in implementing PBS labor policies consisted of hiring temporary workers and making sure that PBS employees came to work each day.  *Dickerson Dep. p.  28-29.*  Fred Williamson did not typically create any labor policy on his own.  *Dickerson Dep. p.  30.*  The creation of new PBS labor policies were typically handled by Tom Dickerson, though Mr. Dickerson would discuss major changes to

PBS labor policy with the President of PBS.  *Dickerson Dep. p. 30.*

28.  Tom Dickerson is the President/Secretary of Professional Business Services of Central Illinois, Inc.("PBS").  *Dickerson Dep. p. 6.*  Tom Dickerson is also the Chief Executive Officer of Clinical Radiologists, S.C..("Clinical Radiologists").  *Dickerson Dep. p. 9.*  Tom Dickerson did not go through separate interviews for the position of Vice President/Secretary of PBS and the position of Chief Executive Officer for Clinical Radiologists.  *Dickerson Dep. p. 33.*  Tom Dickerson was hired by Clinical Radiologists in June, 1998.  *Dickerson Dep. p. 32.*  When Tom Dickerson was hired as the CEO of Clinical Radiologists, his initial employment contract with Clinical Radiologists stated that he would also be responsible for  overseeing PBS.  *Dickerson Dep. p. 33-34.*  Tom Dickerson receives a salary, not including bonuses, of $175,000.00 for acting as CEO of Clinical Radiologists. *Dickerson Dep. p.  10-11.*  Tom Dickerson receives no additional salary for acting as Vice President/Secretary of PBS.  *Dickerson Dep. p. 8.*  Tom Dickerson performs both his duties as Vice President/Secretary of PBS and his duties as CEO of Clinical Radiologists out of the same office which is located in Quincy, Illinois.  *Dickerson Dep. p. 7-10.*

Kim Sparrow, a Clinical Radiologists employee, has specified duties regarding the implementation of PBS personnel actions.  *Dickerson Dep. p.  39 - 40; Defendant's Response to Plaintiff's Interrogatory No. 12.*  Kim Sparrow's specified duties include assisting with human resource functions for PBS and the explanation of PBS's benefits to PBS employees.  *Dickerson Dep. p. 40.*  For some of the duties she performs for PBS, Kim Sparrow is paid by PBS.  *Dickerson Dep. p. 41-42.*

During Plaintiff's employment with PBS, Fred Williamson, Plaintiff's immediate supervisor at PBS, also performed supervisory and managerial functions for Clinical Radiologists.  For example,

6

it was Mr. Williamson who interviewed, hired and discharged employees whether they worked for

PROFESSIONAL BUSINESS SERVICES, or Clinical Radiologists.   *Affidavit of Karen Watkins.*

29.     Tom Dickerson is the President/Secretary of Professional Business Services of Central

Illinois, Inc.("PBS").   *Dickerson Dep. p.  6.*  Tom Dickerson is also the Chief Executive Officer of

Clinical Radiologists, S.C.("Clinical Radiologists").   *Dickerson Dep. p.* 9.  Tom Dickerson did not

go through separate interviews for the position of Vice President/Secretary of PBS and the position

of Chief Executive Officer for Clinical Radiologists.   *Dickerson Dep. p. 33.*  Tom Dickerson was

hired by Clinical Radiologists in June, 1998.  *Dickerson Dep. p.* 32.  When Tom Dickerson was hired

as the CEO of Clinical Radiologists, his initial employment contract with Clinical Radiologists stated

that he would also be responsible for  overseeing PBS.   *Dickerson Dep. p. 33-34.*  Tom Dickerson

receives a salary, not including bonuses, of $175,000.00 for acting as CEO of Clinical Radiologists.

*Dickerson Dep. p.  10-11.*  Tom Dickerson receives no additional salary for acting as Vice

President/Secretary of PBS.  *Dickerson Dep. p.  8.*  Tom Dickerson performs both his duties as Vice

President/Secretary of PBS and his duties as CEO of Clinical Radiologists out of the same office

which is located in Quincy, Illinois.  *Dickerson Dep. p. 7-10.*

Kim Sparrow, a Clinical Radiologists employee, has specified duties regarding the

implementation of PBS personnel actions.  *Dickerson Dep. p.  39 - 40; Defendant's Response to

Plaintiff's Interrogatory No. 12.*  Kim Sparrow's specified duties include assisting with human

resource functions for PBS and the explanation of PBS's benefits to PBS employees.  *Dickerson Dep.

p. 40.*  For some of the duties she performs for PBS, Kim Sparrow receives no other pay other than

the salary she receives from Clinical Radiologists.  *Dickerson Dep. p.  41-42.*

Darrel Anderson, the President of PBS, is a shareholder in both PBS and Clinical Radiologists

7

and is also a member of Clinical Radiologists' Board of Directors and a member of Clinical Radiologists' Executive Committee. *Dickerson Dep. p. 14, 18; Defendant's Responses to Plaintiff's Interrogatory No.5 and No. 6.*

As of May, 2003, 11 of the 15 individuals who sat on Clinical Radiologists' Board of Directors also sat of the Board of Directors of PBS. *Dickerson Dep. p. 25-26; Defendant's Responses to Plaintiff's Interrogatories No. 2 and No.6.*

Clinical Radiologists is managed by an Executive Committee, the members of which are elected by Clinical Radiologists Board of Directors. *Dickerson Dep. p. 22-23; Defendant's Response to Plaintiff's Interrogatory No. 6.* Each member of Clinical Radiologists Executive Committee held stock in, and was a member of the Board of Directors of, PBS. *Dickerson Dep. p. 27; Defendant's Responses to Plaintiff's Interrogatories No. 2 and No. 6.*

During Plaintiff's employment with PBS, Fred Williamson, Plaintiff's immediate supervisor at PBS, also performed supervisory and managerial functions for Clinical Radiologists. For example, it was Mr. Williamson who interviewed, hired and discharged employees whether they worked for PROFESSIONAL BUSINESS SERVICES, or Clinical Radiologists. *Affidavit of Karen Watkins.*

30.    Tom Dickerson is the President/Secretary of Professional Business Services of Central Illinois, Inc.("PBS"). *Dickerson Dep. p. 6.* Tom Dickerson is also the Chief Executive Officer of Clinical Radiologists, S.C..("Clinical Radiologists"). *Dickerson Dep. p. 9.* Tom Dickerson did not go through separate interviews for the position of Vice President/Secretary of PBS and the position of Chief Executive Officer for Clinical Radiologists. *Dickerson Dep. p. 33.* Tom Dickerson was hired by Clinical Radiologists in June, 1998. *Dickerson Dep. p. 32.* When Tom Dickerson was hired as the CEO of Clinical Radiologists, his initial employment contract with Clinical Radiologists stated

that he would also be responsible for overseeing PBS. *Dickerson Dep. p. 33-34*. Tom Dickerson receives a salary, not including bonuses, of $175,000.00 for acting as CEO of Clinical Radiologists. *Dickerson Dep. p. 10-11*. Tom Dickerson receives no additional salary for acting as Vice President/Secretary of PBS. *Dickerson Dep. p. 8*. Tom Dickerson performs both his duties as Vice President/Secretary of PBS and his duties as CEO of Clinical Radiologists out of the same office which is located in Quincy, Illinois. *Dickerson Dep. p. 7-10*.

Kim Sparrow, a Clinical Radiologists employee, has specified duties regarding the implementation of PBS personnel actions. *Dickerson Dep. p. 39 - 40; Defendant's Response to Plaintiff's Interrogatory No. 12*. Kim Sparrow's specified duties include assisting with human resource functions for PBS and the explanation of PBS's benefits to PBS employees. *Dickerson Dep. p. 40*. For some of the duties she performs for PBS, Kim Sparrow receives no other pay other than the salary she receives from Clinical Radiologists. *Dickerson Dep. p. 41-42*.

Darrel Anderson, the President of PBS, is a shareholder in both PBS and Clinical Radiologists and is also a member of Clinical Radiologists' Board of Directors and a member of Clinical Radiologists' Executive Committee. *Dickerson Dep. p. 14, 18; Defendant's Responses to Plaintiff's Interrogatory No.5 and No. 6*.

As of May, 2003, 11 of the 15 individuals who sat on Clinical Radiologists' Board of Directors also sat of the Board of Directors of PBS. *Dickerson Dep. p. 25-26; Defendant's Responses to Plaintiff's Interrogatories No. 2 and No.6*.

Clinical Radiologists is managed by an Executive Committee, the members of which are elected by Clinical Radiologists Board of Directors. *Dickerson Dep. p. 22-23; Defendant's Response to Plaintiff's Interrogatory No. 6*. Each member of Clinical Radiologists Executive Committee held

9

stock in, and was a member of the Board of Directors of, PBS.  *Dickerson Dep. p. 27; Defendant's Responses to Plaintiff's Interrogatories No. 2 and No. 6.*

39.    Complaints regarding Clinical Radiologists physicians were taken by Tom Dickerson to the Clinical Radiologists Executive Committee and Clinical Radiologists physicians were subject to discipline by the Executive Committee.  *Dickerson Dep. p. 24*

40.    Complaints regarding Clinical Radiologists physicians were taken by Tom Dickerson to the Clinical Radiologists Executive Committee and Clinical Radiologists physicians were subject to discipline by the Executive Committee.  *Dickerson Dep. p. 24***.**

**3.  Facts Claimed To Be Immaterial**

None

**4.  Additional Material Facts**

1.    Tom Dickerson is the President/Secretary of Professional Business Services of Central Illinois, Inc.("PBS").  *Dickerson Dep. p.  6.*

2.    Tom Dickerson is also the Chief Executive Officer of Clinical Radiologists, S.C..("Clinical Radiologists").  *Dickerson Dep. p. 9.*

3.    Tom Dickerson did not go through separate interviews for the position of Vice President/Secretary of PBS and the position of Chief Executive Officer for Clinical Radiologists. *Dickerson Dep. p. 33.*

4.    Tom Dickerson was hired by Clinical Radiologists in June, 1998.  *Dickerson Dep. p. 32.*

5.    When Tom Dickerson was hired as the CEO of Clinical Radiologists, his initial employment contract with Clinical Radiologists stated that he would also be responsible for

10

overseeing PBS. *Dickerson Dep. p. 33-34.*

6.      Tom Dickerson receives a salary, not including bonuses, of $175,000.00 for acting as CEO of Clinical Radiologists. *Dickerson Dep. p. 10-11.*

7.      Tom Dickerson receives no additional salary for acting as Vice President/Secretary of PBS. *Dickerson Dep. p. 8.*

8.      Tom Dickerson performs both his duties as Vice President/Secretary of PBS and his duties as CEO of Clinical Radiologists out of the same office which is located in Quincy, Illinois. *Dickerson Dep. p. 7-10.*

9.      As of May, 2003, there 144,500 outstanding shares of PBS stock. *Dickerson Dep. p. 14-15.*

10.      The 12 individuals who owned stock in both PBS and Clinical Radiologists were Darrel Anderson, Steve Jackman, John Snodsmith,, Charles Neal, Lisa Wichterman, William Moore, Casey Muehle, Kevin Coackley, David Alexander, Andrew Sherrick, Eric Paul Justin and Patricia Whitworth. *Dickerson Dep. p. 14.*

11.      As of May, 2003, approximately 130,000 shares out of 144,500 outstanding shares of PBS stock were owned by individuals who also owned stock in Clinical Radiologists. *Dickerson Dep. p. 14 - 15; Defendant's Response to Plaintiff's Interrogatory No. 2.*

12.      As of May, 2003, Darrel Anderson, Steve Jackman, John Snodsmith,, Charles Neal, Lisa Wichterman, William Moore, Casey Muehle, Kevin Coackley, David Alexander, Andrew Sherrick, Eric Paul Justin and Patricia Whitworth, the 12 individuals who owned stock in both PBS and Clinical Radiologists, owned a majority of the outstanding shares of Clinical Radiologists stock. *Dickerson Dep. p. 15-17; Defendant's Response to Plaintiff's Interrogatory No. 3.*

13.     At the top of PBS' organizational chart is the Board of Directors.  *Dickerson Dep. p. 17; Defendant's Response to Plaintiff's Interrogatory No. 5.*

14.     PBS' Board of Directors and shareholders are the same individuals.  *Dickerson Dep. p. 17; Defendant's Responses to Plaintiff's Interrogatory No. 2 and No. 5.*

15.     According to the PBS organizational chart, immediately below the PBS Board of Directors is Darrel Anderson, the President of PBS. *Dickerson Dep. p. 8; Defendant's Response to Plaintiff's Interrogatory No. 5.*

16.     Darrel Anderson, the President of PBS, is a shareholder in both PBS and Clinical Radiologists and is also a member of Clinical Radiologists' Board of Directors and a member of Clinical Radiologists' Executive Committee.  *Dickerson Dep. p. 14, 18; Defendant's Responses to Plaintiff's Interrogatory No.5 and No. 6.*

17.     According to PBS organizational chart, Tom Dickerson, as Vice President of PBS, was immediately below Darrel Anderson in the PBS hierarchy.  *Dickerson Dep. p. 20; Defendant's Response to Plaintiff's Interrogatory No. 5.*

18.     According to the PBS organizational chart, below Tom Dickerson, the Vice-President of PBS, is the Billings Operations Manager; in May, 2003 PBS' Billings Manager was Fred Williamson. *Dickerson Dep. p. 20; Defendant's Response to Plaintiff's Interrogatory No. 5.*

19.     At the top of Clinical Radiologists management structure is a Board of Directors comprised of 15 individuals.  *Dickerson Dep. p. 25-26; Defendant's Response to Plaintiff's Interrogatory No. 6.*

20.     As of May, 2003, 11 of the 15 individuals who sat on Clinical Radiologists' Board of Directors also sat of the Board of Directors of PBS.  *Dickerson Dep. p. 25-26; Defendant's*

*Responses to Plaintiff's Interrogatories No. 2 and No.6.*

21.     The 11 individuals who sat on both PBS' Board of Directors and Clinical Radiologists Board of Directors were Darrel Anderson, Charles Neal, John Snodsmith, Lisa Wichterman, William Moore, Casey Muehle, Kevin Coackley, David Alexander, Andrew Sherrick, Eric Paul Justin and Patricia Whitworth. *Dickerson Dep. p. 25-26; Defendant's Responses to Plaintiff's Interrogatories No. 2 and No. 6.*

22.     The Clinical Radiologists Board of Directors is elected by the Clinical Radiologists shareholders to assist with carrying out the functions of the corporation. *Dickerson Dep. p. 26.*

23.     Clinical Radiologists is managed by an Executive Committee, the members of which are elected by Clinical Radiologists Board of Directors. *Dickerson Dep. p. 22-23; Defendant's Response to Plaintiff's Interrogatory No. 6.*

24.     As of May, 2003, the individuals on the Clinical Radiologists Executive Committee were Darrel Anderson, John Snodsmith, William Moore, Andrew Sherrick, and Eric Paul Justin. *Dickerson Dep. p.* 27; *Defendant's Response to Plaintiff's Interrogatory No. 6.*

25.     Each member of Clinical Radiologists Executive Committee held stock in, and was a member of the Board of Directors of, PBS. *Dickerson Dep. p. 27; Defendant's Responses to Plaintiff's Interrogatories No. 2 and No. 6.*

26.      All matters related to Clinical Radiologists' non-physician employees, such as employment and personnel issues, are handled by Tom Dickerson, the CEO of Clinical Radiologists. *Dickerson Dep. p. 22-23; Defendant's Response to Plaintiff's Interrogatory No. 6.*

27.     Besides being CEO of Clinical Radiologists, Tom Dickerson held stock in, and was member of the Board of Directors of, PBS. *Dickerson Dep. p. 28; Defendant's Response to*

13

*Plaintiff's Interrogatory No. 2.*

28.    PBS labor relations policies were implemented by Fred Williamson, the PBS Billing Manager. *Dickerson Dep. p. 28; Defendant's Response to Plaintiff's Interrogatory No. 8.*

29.    Fred Williamson had to obtain the approval of Tom Dickerson for labor and employment decisions such as the hiring of permanent staff, the termination of permanent staff, the change of any labor relations policy that had previously been implemented. *Dickerson Dep. p. 28-29.*

30.    Fred Williamson's role in implementing PBS labor policies consisted of hiring temporary workers and making sure that PBS employees came to work each day. *Dickerson Dep. p. 28-29.*

31.    Fred Williamson did not typically create any labor policy on his own. *Dickerson Dep. p. 30.*

32.    The creation of new PBS labor policies were typically handled by Tom Dickerson, though Mr. Dickerson would discuss major changes to PBS labor policy with the President of PBS. *Dickerson Dep. p. 30.*

33.    Tom Dickerson was also the individual who formulated and implemented labor relations policies regarding non-physician employees for Clinical Radiologists; Dickerson was responsible for evaluating employees, granting employees time off and reassigning work to employees. *Dickerson Dep. p. 34-37; Defendant's Response to Plaintiff's Interrogatory No. 9.*

34.    Kim Sparrow, a Clinical Radiologists employee, has specified duties regarding the implementation of PBS personnel actions. *Dickerson Dep. p. 39 - 40; Defendant's Response to Plaintiff's Interrogatory No. 12.*

35.    Kim Sparrow's specified duties include assisting with human resource functions for

14

PBS and the explanation of PBS's benefits to PBS employees. *Dickerson Dep. p. 40.*

36. Kim Sparrow does not hold a job title with PBS. *Dickerson Dep. p. 40.*

37. For some of the duties she performs for PBS, Kim Sparrow receives no other pay other than the salary she receives from Clinical Radiologists. *Dickerson Dep. p. 41-42.*

38. PBS does not claim Kim Sparrow as an employee for tax purposes; she is considered to be "strictly a Clinical Radiologists employee". *Dickerson Dep. p. 42.*

## APPLICABLE LAW

### 1. Procedural Law (Standard for Summary Judgment)

1. Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d. 265 (1986).

2. Once a moving party meets its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed.R.Civ. P. 56(e); *Silk v. City of Chicago,* 194 F.3d 788, 798 (7th. Cir 1999)

3. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.,* 212 F.3d 969, 972(7th. Cir. 2000).

4. A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

2. **Substantive Law**

1. The Code of Federal Regulations states, in relevant part:

(a) An employer covered by FMLA is any person engaged in commerce or in any industry or activity affecting commerce, who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year...

(c) Normally the legal entity which employs the employee is the employer under FMLA. Applying this principle, a corporation is a single employer rather than its separate establishments or divisions.

> (1) Where one corporation has an ownership interest in another corporation, it is a separate employer unless it meets the "joint employment" test discussed in § 825.106, or the "integrated employer" test contained in paragraph (c)(2) of this section.

> (2) Separate entities will be deemed to be parts of a single employer for purposes of FMLA if they meet the "integrated employer" test. Where this test is met, the employees of all entities making up the integrated employer will be counted in determining employer coverage and employee eligibility. A determination of whether or not separate entities are an integrated employer is not determined by the application of any single criterion, but rather the entire relationship is to be reviewed in its totality. Factors considered in determining whether two or more entities are an integrated employer include:

> (i) Common management;

> (ii) Interrelation between operations;

> (iii) Centralized control of labor relations; and

> (iv) Degree of common ownership/financial control. *29 C.F.R. Sec. 825.104.*

**ARGUMENT**

**A.  The Test Announced in *Papa v. Katy Industries, Inc.*, Is Not Applicable Here.**

Defendant has asserted that it is not an employer under the test announced in *Papa v. Katy*

16

*Industries, Inc.*, 166 F.3d 937, 940-942 (7th Cir 1999). However, the test established in *Papa v. Katy Industries, Inc.* is not applicable to the instant matter.

The *Papa* court's single employer test created in the context of a Title VII discrimination claim. *Id.* In the instant case, Plaintiff is not alleging that she is the victim of illegal discrimination. Rather, Plaintiff has alleged that her rights to medical leave under the Family and Medical Leave Act have been violated.

The Department of Labor, the administrative agency charged with interpreting and administering the FMLA, has promulgated regulations which state that the "integrated employer" concept is applicable to FMLA claims. The test developed for the Department of Labor for FMLA claims is significantly different than the *Papa v. Katy Industries, Inc.* test.

When addressing the issue of what employers are covered by the FMLA, the Department of Labor's regulations state, in relevant part, that:

(a) An employer covered by FMLA is any person engaged in commerce or in any industry or activity affecting commerce, who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year...

(c) Normally the legal entity which employs the employee is the employer under FMLA. Applying this principle, a corporation is a single employer rather than its separate establishments or divisions.

(1) Where one corporation has an ownership interest in another corporation, it is a separate employer unless it meets the "joint employment" test discussed in § 825.106, or the "integrated employer" test contained in paragraph (c)(2) of this section.

(2) Separate entities will be deemed to be parts of a single employer for purposes of FMLA if they meet the "integrated employer" test. Where this test is met, the employees of all entities making up the integrated employer will be counted in determining employer coverage and employee eligibility. A determination of whether or not separate entities are an integrated

17

employer is not determined by the application of any single criterion, but rather the entire relationship is to be reviewed in its totality. Factors considered in determining whether two or more entities are an integrated employer include:

(i) Common management;

(ii) Interrelation between operations;

(iii) Centralized control of labor relations; and

(iv) Degree of common ownership/financial control. *29 C.F.R. Sec. 825.104.*

The above regulations undeniably establish that the Secretary of the Department of Labor has construed the FMLA in such a manner as to find that the concept of "integrated employer" does apply to FMLA claims. Considerable weight must be accorded to an executive department's construction of a statutory scheme it is entrusted to administer. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *MBH Commodity Advisors, Inc. v. Commodity Futures Trading Commission*, 250 F.3d 1052, 1060 (7th Cir. 2001)(citations omitted).

Defendant's argument that the Court should apply the *Papa* test completely ignores the Department of Labor's interpretation of the FMLA and, as a result, it is fatally flawed. Therefore, the Court should reject Defendant's urging regarding the application of the *Papa* test and, instead, defer to the Department of Labor and follow the single employer test set forth in the Department's regulations.

**B. PBS, With Clinical Radiologists, Is An Integrated Employer.**

Separate entities will be deemed to be parts of a single employer for purposes of FMLA if they meet the "integrated employer" test. Where this test is met, the

18

employees of all entities making up the integrated employer will be counted in determining employer coverage and employee eligibility. A determination of whether or not separate entities are an integrated employer is not determined by the application of any single criterion, but rather the entire relationship is to be reviewed in its totality. Factors considered in determining whether two or more entities are an integrated employer include:

(i) Common management;

(ii) Interrelation between operations;

(iii) Centralized control of labor relations; and

(iv) Degree of common ownership/financial control.

29 C.F.R. Sec. 825.104.

A look at each of these factors establishes that PBS and Clinical Radiologists, together, constitute an integrated employer according to the Departments regulations.


(i)  Common Management

The first factor in the four part test promulgated by the Department of Labor is common management.  Defendant has asserted in its motion for summary judgment that day to day operations of PBS are controlled by the manager of PBS, this allegation is not an accurate representation of the facts.

Fred Williamson was the PBS manager during the time of Respondent's employment with Defendant.  Fred Williamson's role in implementing PBS labor policies consisted of hiring *temporary* workers and making sure that PBS employees came to work each day.  *Dickerson Dep. p.  28-29.* Mr. Williamson had to obtain the approval of Tom Dickerson, PBS Vice-President, for labor and employment decisions such as the hiring of permanent staff, the termination of staff, and the change

19

of any labor relations policy that had previously been implemented. *Dickerson Dep. p. 28-29.* Fred Williamson did not typically create any labor policy on his own. *Dickerson Dep. p. 30.* The creation of new PBS labor policies were typically handled by Tom Dickerson. *Dickerson Dep. p. 30.* These facts demonstrate that, at best, Mr. Williamson was a low level supervisor whose authority basically consisted of hiring temporary workers, making sure PBS employees reported for work and implementing managment and labor policy created by Tom Dickerson.

The real responsibility for the management of PBS rested with Tom Dickerson. The authority to hire permanent workers rested with Tom Dickerson. The authority to all PBS workers rested with Mr. Dickerson. And, the authority to alter or amend management policy rested with Mr. Dickerson.

Tom Dickerson, as CEO of Clinical Radiologist, was also the individual who handled all matters related to Clinical Radiologists' non-physician employees, such as employment and personnel issues. *Dickerson Dep. p. 22-23; Defendant's Response to Plaintiff's Interrogatory No. 6.* It was Mr. Dickerson who was responsible for evaluating employees, granting time off and assigning work. *Dickerson Dep. p. 36.*

In regards to physician employee issues, Clinical Radiologists is managed by its Executive Committee *Dickerson Dep. p. 22-23; Defendant's Response to Plaintiff's Interrogatory No. 6.* For example, patient and client complaints regarding Clinical Radiologists physicians were taken by Tom Dickerson to the Clinical Radiologists Executive Committee and physician disciplinary issues were handled by the Executive Committee. *Dickerson Dep. p. 24.* Each member of Clinical Radiologists Executive Committee held stock in, and was a member of the Board of Directors of, PBS. *Dickerson Dep. p. 27; Defendant's Responses to Plaintiff's Interrogatories No. 2 and No. 6.*

20

(ii) Interrelation between operations.

The second factor in the integrated employer test is the interrelationship of operations between PBS and Clinical Radiologists. The most telling facts in regards to this element of the test pertain to Tom Dickerson.

Tom Dickerson is both the President/Secretary of PBS and Chief Executive Officer of Clinical Radiologists. *Dickerson Dep. p. 6, 9.* Mr. Dickerson did not go through separate interviews for the position of Vice President/Secretary of PBS and the position of Chief Executive Officer for Clinical Radiologists. In fact, when Tom Dickerson was hired as the CEO of Clinical Radiologists, his initial employment contract with Clinical Radiologists stated that he would also be responsible for overseeing PBS. *Dickerson Dep. p. 33-34.* Other than the salary he receives for acting as CEO of Clinical Radiologists, Tom Dickerson receives no additional salary for acting as Vice President/Secretary of PBS. *Dickerson Dep. p. 8, 10-11.* Finally, Tom Dickerson performs both his duties as Vice President/Secretary of PBS and his duties as CEO of Clinical Radiologists out of the same office which is located in Quincy, Illinois. *Dickerson Dep. p. 7-10.*

Besides Mr. Dickerson's services, PBS and Clinical Radiologists also share additional administrative services. For example, it is undisputed that both PBS and Clinical Radiologists utilize the services of Kim Sparrow, a Clinical Radiologists employee, to explain employee benefits issues to PBS and Clinical Radiologists employees. *Dickerson Dep. p. 39 - 40; Defendant's Response to Plaintiff's Interrogatory No. 12.* Kim Sparrow may be paid by Clinical Radiologists for explaining PBS employee benefits to PBS employees. *Dickerson Dep. p. 41.*

Additionally, there is a disputed issues of fact as to whether, during Plaintiff's employment with PBS, Fred Williamson, Plaintiff's immediate supervisor at PBS, also performed supervisory and

21

managerial functions for Clinical Radiologists. Specifically, Plaintiff has testified that she observed Mr. Williamson perfom functions such interviewing, hiring and discharging employees whether they worked for PBS and Clinical Radiologists. *See Plaintiff's Response to Defendant's Statement of Undisputed Fact No. 28 and No. 29 and documents cited therein.*

(iii) Centralized control of labor relations.

The third element of the integrated employer test is whether there is centralized control of labor relations. Again, Tom Dickerson's role with PBS and Clinical Radiologists is instructive.

The creation of new PBS labor policies were typically handled by Tom Dickerson, though Mr. Dickerson. *Dickerson Dep. p. 30.* Tom Dickerson, as CEO of Clinical Radiologist, was also the individual who handled all matters related to Clinical Radiologists' non-physician employees, such as employment and personnel issues. *Dickerson Dep. p. 22-23; Defendant's Response to Plaintiff's Interrogatory No. 6.* Mr. Dickerson was the individual who was responsible for evaluating Clinical Radiologists' non-physician employees, granting them time off and assigning them work. *Dickerson Dep. p. 36.*

Moreover, when Tom Dickerson was hired by Clinical Radiologists to act as its CEO, part of the duties assigned to him by his employment contract with Clinical Radiologists included responsibility for overseeing PBS. *Dickerson Dep. p. 6, 9, 32 - 34.* Clearly, Clinical Radiologists had the authority to hire the individual who was primarily responsible for creating and implementing labor relations policy for PBS and Clinical Radiologists.

Also significant is the fact that Clinical Radiologists' physician disciplinary issues were handled by Clincial Radiologists' Executive Committee. *Dickerson Dep. p. 24***.** Each member of

22

Clinical Radiologists Executive Committee held stock in, and was a member of the Board of Directors of, PBS. *Dickerson Dep. p. 27; Defendant's Responses to Plaintiff's Interrogatories No. 2 and No. 6.*

And, again, there is a disputed issue of fact as to whether or not Fred Williamson, the manager of PBS, also performed functions such as interviewing, hiring and firing Clinical Radiologists employees. *See Plaintiff's Response to Defendant's Statement of Undisputed Fact No. 28 and No. 29 and documents cited therein.*

(iv) Degree of common ownership/financial control.

The final element of the Department of Labor's integrated employer test is the degree of common ownership and financial control of PBS and Clinical Radiologists.

It is undisputed that, As of May, 2003, there 144,500 outstanding shares of PBS stock. *Dickerson Dep. p. 14-15.* There were 12 individuals who owned stock in both PBS and Clinical Radiologists: Darrel Anderson, Steve Jackman, John Snodsmith,, Charles Neal, Lisa Wichterman, William Moore, Casey Muehle, Kevin Coackley, David Alexander, Andrew Sherrick, Eric Paul Justin and Patricia Whitworth. *Dickerson Dep. p. 14.* As of May, 2003, approximately 130,000 shares out of 144,500 outstanding shares of PBS stock were owned by individuals who also owned stock in Clinical Radiologists. *Dickerson Dep. p. 14 - 15; Defendant's Response to Plaintiff's Interrogatory No. 2.* As of May, 2003, Darrel Anderson, Steve Jackman, John Snodsmith, Charles Neal, Lisa Wichterman, William Moore, Casey Muehle, Kevin Coackley, David Alexander, Andrew Sherrick, Eric Paul Justin and Patricia Whitworth, the 12 individuals who owned stock in both PBS and Clinical Radiologists, owned a majority of the outstanding shares of Clinical Radiologists stock.

*Dickerson Dep. p. 15-17; Defendant's Response to Plaintiff's Interrogatory No. 3.*

At the top of PBS' organizational chart is the Board of Directors. *Dickerson Dep. p. 17; Defendant's Response to Plaintiff's Interrogatory No. 5.* PBS' Board of Directors and shareholders are the same individuals. *Dickerson Dep. p. 17; Defendant's Responses to Plaintiff's Interrogatory No. 2 and No. 5.* Twelve members of PBS' Board of Directors also own the majority of Clinical Radiologists' stock.

According to the PBS organizational chart, immediately below the PBS Board of Directors is Darrel Anderson, the President of PBS. *Dickerson Dep. p. 8; Defendant's Response to Plaintiff's Interrogatory No. 5.* Darrel Anderson, the President of PBS, is a shareholder in both PBS and Clinical Radiologists and is also a member of Clinical Radiologists' Board of Directors and a member of Clinical Radiologists' Executive Committee. *Dickerson Dep. p. 14, 18; Defendant's Responses to Plaintiff's Interrogatory No.5 and No. 6.*

At the top of Clinical Radiologists management structure is a Board of Directors comprised of 15 individuals. *Dickerson Dep. p. 25-26; Defendant's Response to Plaintiff's Interrogatory No. 6.* The Clinical Radiologists Board of Directors is elected by the Clinical Radiologists shareholders to assist with carrying out the functions of the corporation. *Dickerson Dep. p. 26.*

As of May, 2003, 11 of the 15 individuals who sat on Clinical Radiologists' Board of Directors also sat of the Board of Directors of PBS. *Dickerson Dep. p. 25-26; Defendant's Responses to Plaintiff's Interrogatories No. 2 and No.6.* The 11 individuals who sat on both PBS' Board of Directors and Clinical Radiologists Board of Directors were Darrel Anderson, Charles Neal, John Snodsmith, Lisa Wichterman, William Moore, Casey Muehle, Kevin Coackley, David Alexander, Andrew Sherrick, Eric Paul Justin and Patricia Whitworth. *Dickerson Dep. p. 25-26;*

24

*Defendant's Responses to Plaintiff's Interrogatories No. 2 and No. 6.*

Clinical Radiologists is managed by an Executive Committee, the members of which are elected by Clinical Radiologists Board of Directors. *Dickerson Dep. p. 22-23; Defendant's Response to Plaintiff's Interrogatory No. 6.* As of May, 2003, the individuals on the Clinical Radiologists Executive Committee were Darrel Anderson, John Snodsmith, William Moore, Andrew Sherrick, and Eric Paul Justin. *Dickerson Dep. p. 27; Defendant's Response to Plaintiff's Interrogatory No. 6.* Each member of Clinical Radiologists Executive Committee held stock in, and was a member of the Board of Directors of, PBS. *Dickerson Dep. p. 27; Defendant's Responses to Plaintiff's Interrogatories No. 2 and No. 6.*

The above facts clearly demonstrate that financial ownership and control of both PBS and Clincial Radiologists rested with the same individuals. The Board of Directors of PBS and the Board of Directors of Clinical Radiologists were comprised, almost exclusively, of the same individuals: Darrel Anderson, Charles Neal, John Snodsmith, Lisa Wichterman, William Moore, Casey Muehle, Kevin Coackley, David Alexander, Andrew Sherrick, Eric Paul Justin and Patricia Whitworth. The consolidation of control of these two entities is further exemplified by the fact that PBS' President, Darrel Anderson, was also a member of Clincial Radiologists' Board of Directors and Executive Committee. Finally, Clinical Radiologists' Executive Committee was made up exclusively of individuals who were members of PBS' Board of Directors.

And, it is clear that the owners of PBS and Clinical Radiologists have treated, and continue to treat, these two businesses as a single entity for operational purposes. Again, this is exemplified by the fact that when the owners of Clinical Radiologists hired Tome Dickerson in 1988 to act as CEO for Clinical Radiologists, the employment contract they gave Tom Dickerson also made him

25

responsible for overseeing PBS.  Additionally, the owners of Clinical Radiologists have assigned

Clinical Radiologists employee Kim Sparrow responsibility for handling employee benefits issues

for PBS, even though she is not technically considered a PBS employee.

Summary of the integrated employer issue.

In *Smith v. Allen Health Systems, Inc.,* the plaintiff brought an FMLA claim against Allen

Health Systems, Allen Memorial Hospital Corporation ("Allen Hospital") and the Memorial

Foundation of Allen Hospital ("the Foundation") alleging that these entities constituted an integrated

employer for FMLA purposes. *Smith v. Allen Health Systems, Inc.*, 2001 WL 34148915 (N.D. Iowa

2001).  The Defendants filed a motion for summary judgment asserting: 1) that plaintiff was

employed solely by the Foundation; 2) the Foundation employed only four employees; and 3) the

plaintiff was not employed by an "employer" covered by the FMLA.  *Id.*   In denying the Defendant's

motion for summary judgment, the  court noted:

> "Smith has presented a genuine [issue] of material fact on whether Allen Systems,
> Allen Hospital and the Foundation are an integrated employer for FMLA purposes.
> Smith alleges that during the relevant time period Robert Justis served as the
> executive director of the Foundation and as Director of Corporate Relations and
> Development for Allen Health Systems, and that he worked on behalf of Allen
> Hospital and the Foundation.  The Foundation's offices are located within Allen
> Hospital and the three entities utilized consolidated administrative functions.  Smith
> has also presented evidence that there is significant common ownership and control
> between the three entities.  This evidence is sufficient to raise a genuine issue of
> materail fact as to whether Allen Health Systems, Allen Hospital and the Foundation
> are an integrated employer under the FMLA." *Id.*

In the present case, it is undisputed that during the period of Plaintiff's employ, Tom

Dickerson served as Vice President/Secretary of PBS and as CEO of Clinical Radiologists.  Mr.

Dickerson worked out of the same office regardless of whether he was working in his capacity as Vice

26

President of PBS or working in his capacity as CEO of Clinical Radiologists.

Plaintiff has also demonstrated that Mr. Dickerson is the person primarily responsible for creating and implementing labor policy for both PBS and Clinical Radiologists.

And, it is undisputed that PBS and Clinical Radiologists utilized common administrative functions. For example, when Tom Dickerson was hired as CEO of Clinical Radiologists, his contract with Clinical Radiologists assigned Mr. Dickerson responsibility by for overseeing PBS. Both PBS and Clinical Radiologists utilize the same individual, Kim Sparrow, to perform certain employee benefit functions. And there is a disputed issue of fact as to whether Fred Williamson was responsible for interviewing, hiring and firing both PBS and Clinical Radiologists employees.

And finally, it is undisputed that the financial ownership and control of both PBS and Clinical Radiologists rests with the same individuals. The majority owners of PBS and Clinical Radiologists are the same individuals. The Board of Director and Executive Committee members of Clinical Radiologists are primarily the same individuals who comprise PBS Board of Directors. And PBS' President is also a member of Clinical Radiologists Board of Directors and Executive Committee.

In sum, the above evidence raises a genuine issue of material fact as to whether PBS and Clinical Radiologists constitute an integrated employer for FMLA purposes.

## C.   PBS and Clinical Radiologists jointly employ 50 employees.

Defendant has asserted that PBS and Clinical Radiologists jointly do not employee 50 employees. Defendant's argument is specifically premised on an assertion that the Clinical Radiologists' physicians do not count fit within the FMLA's definition of "employee." In support of this assertion the Defendant cites *Clackamas Gastroenterology Associates, P.C. v. Wells,* 538 U.S.

440, 444-445, 123 S.Ct. 1673, 155 L.Ed.2d 615 (2003).

In *Clackamas*, the Supreme Court found each of the following factors to be relevant to the inquiry whether a shareholder director is an employee:

    i)      Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work;

    ii)    Whether and, if so, to what extent the organization supervises the individual's work;

    iii)   Whether the individual reports to someone higher in the organization;

    iv)   Whether and, if so, to what extent the individual is able to influence the organization;

    v)    Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts;

    vi)   Whether the individual shares in the profits, losses, and liabilities of the organization. *Clackamas,* 538 U.S. at 449 - 50.

The Defendant asserts that the application of these factors to the Clinical Radiologists physicians indicates that the physicians do not meet the FMLA's definition of "employee." This argument is without merit.

i)  Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work.

Defendant admits that the physicians employed by Clinical Radiologists may be terminated.  Defendant attempts to circumvent this fact by asserting that the termination of a Clinical Radiologists physician requires a 2/3 vote of the Board of Directors.  The fact that the termination of a Clinical Radiologist requires a 2/3 vote of the Board of Directors is irrelevant. Nowhere in the *Glackamas* opinion is there any language which suggests that impact of the fact

that the physicians may be terminated is lessened by the fact that termination requires a 2/3 vote of the Board of Directors. The simple fact is that Clinical Radiologists' physicians may be involuntarily discharged.

### ii) Whether and, if so, to what extent the organization supervises the individual's work.

The facts further show that the Executive Committee of Clinical Radiologists formulates and implements all labor relations policies applicable to Clinical Radiologists physicians. *Defendant's Answer To Plaintiff's Interrogatory No. 9.* Clearly, Clinical Radiologists, through the Executive Committee, sets the rules and regulations of the physicians work. As a result, the first factor weighs in favor a determination that the physicians are employees.

The facts further show that, contrary to Defendant's claims, Clinical Radiologists supervises the work of its physicians. This is exemplified by the fact that Tom Dickerson brings patient complaints regarding Clinical Radiologists physicians to the Executive Committe for resolution. If, as Defendant asserts, each physician operates in a vacuum without answering to anyone, it would be unnecessary for the Executive Committee to address patient complaints as the Executive Committee would be powerless to impose any discipline upon the offending physician.

### iii) Whether the individual reports to someone higher in the organization.

The facts further demonstrate that the Clinical Radiologists physicians report to someone higher in the organization. Again, the facts show that the physicians answer to the Clinical Radiologists' Executive Committee.

iv)  Whether and, if so, to what extent the individual is able to influence the organization.

The facts also show that the majority of the physicians have little ability to influence the corporation.  It is the Executive Committee which manages the business of the Clinical Radiologists and handles all matters related to physicians.  *Defendant's Answer To Plaintiff's Interrogatory No. 6.*  Of course, Defendant asserts that "The structure of Clinical Radiologists is designed to provide each shareholder with the ability to influence the organization by voting on issues reserved to the shareholders, voting for members of the Board of Directors, running for the position of director and running to be a member of corporation's Executive Committee." *Defendant's Memorandum p. 18.*

However, this argument ignores the fact that there are 23 shareholders in Clinical Radiologists.  Not all 23 shareholders are members of the Board of Directors.  And, there are only five shareholders who sit on the Clincial Radiologists Executive Committee, the entity which is responsible for creating and implementing labor relations policy applicable to the physicians.  The Executive Committee is elected by those individuals who sit on the Board of Directors.

In light of the number of shareholders in Clinical Radiologists, it is clear that the ability of a common shareholder-physician who is not a member of the Executive Committee is limited.  Morever, the ability of a share-holder physician who is not a member of the Board of Directors to influence the organization is even more attenuated.

In large partnerships, some members may well qualify as "employees" because control is concentrated in a small number of managing partners. *Cf. Glackamas,* 538 U.S. at 444.  Here, the evidence shows that control of Clinical Radiologists is concentrated in the five individuals

30

who sit on the Executive Committee. Even if those five individuals who sit on the Executive Committee are not counted as "employees", there are still 32 individuals who should be counted as "employees" of Clinical Radiologists.[1]  When combined with the 19 employees of PBS[2], it is clear that Clinical Radiologists and PBS jointly employee more than 50 employees.

v)  Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts.

The facts show that the parties intended the individual physicians to be employees.  This intent is demonstrated by the fact that the physicians were subject to discipline, by the fact that the Executive Committee had the authority to create and implement labor relations policies applicable to the physicians and by the fact that the physicians had to answer to the Executive Committee when they were named in patient complaints.

vi)  Whether the individual shares in the profits, losses, and liabilities of the organization.

Plaintiff concedes that the individual physicians share in the profits, losses and liabilities of the organization as a result of their status as shareholders.  However, this fact, by itself, is not sufficient to warrant a finding that the physician shareholders are not employees.  There is nothing inherently inconsistent between the coexistence of a proprietary and an employment relationship.  *Goldberg v. Whitiaker House Cooperative, Inc.,* 366 U.S. 28, 32, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961)

---

[1]  See *Defendant's Answer To Plaintiff's Interrogatory No. 13.*

[2]  See *Defendant's Answer To Plaintiff's Interrogatory No. 13.*

<u>Summary of the physician shareholder/employee issue.</u>

When the *Clackamas* test is applied to the facts of this case, the evidence shows that five of the six factors weigh in favor of a determination that the Clinical Radiologists physicians, with the possible exception of the five individuals who sit on the Executive Committee, meet the FMLA's definition of employee. At the very least, Clinical Radiologists has 32 "employees." Thus, PBS and Clinical Radiologists jointly employed at least 51 employees at the time of Karen Watkins discharge.

## CONCLUSION

***WHEREFORE***, in light of the above, Plaintiff, KAREN WATKINS, respectfully requests that Defendant's Motion for Summary Judgment be denied.

Respectfully submitted,
KAREN WATKINS, Plaintiff,

By:<u>/s/ Bradley B. Wilson</u>
One of her Attorneys

Bradley B. Wilson
GATES, WISE & SCHLOSSER, P.C.
1231 S. Eighth Street
Springfield, IL 62703
Phone: (217) 522-9010
Facsimile: (217) 522-9020
e-mail: brad@gwspc.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of December, 2004, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Gerri Papushkewych
Attorney of Law
2904 Greenbriar Drive, Suite D
Springfield, IL 62704

/s/ Bradley B. Wilson