E-FILED
Monday, 17 January, 2005 03:50:57 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| KAREN WATKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 03-3283 |
| vs. ) | |
| ) | |
| PROFESSIONAL BUSINESS SERVICES ) | |
| OF CENTRAL ILLINOIS, INC., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY TO
PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Now comes the Defendant, Professional Business Services of Central Illinois, Inc. ("PBS"), by and through its attorneys Wolfson & Papushkewych LLP and for its Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment submits and attaches the Supplemental Affidavits of Charles E. Neal, M.D. and Thomas C. Dickerson and states as follows:

**I. Reply to Additional Material Facts**

**1.  Reply to Plaintiff's qualification of "undisputed" designation to statement of fact number 23**

2).    Dispute that Fred Williamson had to obtain the approval of Tom Dickerson for the hiring of permanent staff. This misstates Dickerson's testimony on the cited pages in which Dickerson responds to a question about <u>policies</u> requiring Dickerson's approval (Dickerson dep. p. 28). Fred Williamson hired personnel to fill regular and temporary positions within the hiring budget without Dickerson's approval

[Dickerson dep. p. 29; Supplemental Affidavit of Thomas C. Dickerson, paragraph 1 (Dickerson Supp.Aff. 1)]. Tom Dickerson was not involved in recruiting, interviewing, selecting or hiring regular or temporary PBS employees for already budgeted positions (Dickerson Supp.Aff. 1).

3). Dispute that Fred Williamson's role at PBS consisted of hiring temporary workers and making sure that PBS employees came to work each day. Fred Williamson handled the supervision of employees, the operation of the billing office and also implemented PBS policy (Dickerson dep. pp. 21-22, 25, 30). Fred Williamson operated the billing office on a day to day basis at the level of a manager (Dickerson dep. pp. 21-22). Fred Williamson hired personnel to fill regular and temporary positions within the hiring budget without Dickerson's approval (Dickerson dep. p. 29; Dickerson Supp.Aff. 1). Fred Williamson recruited, interviewed, selected and hired PBS employees as well as supervised and disciplined them (Dickerson Supp.Aff. 1 and 2). Fred Williamson did not create labor policy on his own, that is, he did not create the "big picture rules" that governed PBS (Dickerson dep. pp. 30-31).

5). Dispute completeness of statement. The Vice President seeks approval for major changes in PBS policy from the President or Board of Directors, as needed (Dickerson dep. p. 34; Defendant's Undisputed Fact 22).

**2. Reply to Material Facts Claimed to Be Disputed**

8. Dispute sentence 1. Tom Dickerson had immediate day to day supervision of non-physician employees of Clinical Radiologists (Dickerson dep. p. 25). As Chief Executive Officer of Clinical Radiologists, he formulated and implemented labor policies for non-physician employees with the approval of the Executive Committee working

through the Board of Directors, which policies would then be carried out based upon the approval of one or more of those entities (Dickerson dep. pp. 34-36).

16.     Admit that Tom Dickerson performed his duties as CEO of Clinical Radiologists and as Vice President/Secretary of PBS out of his home office located in Quincy, Illinois (Dickerson Supp.Aff. 3); dispute inference that this office is an office of PBS or Clinical Radiologists.

18.     Dispute sentence 1 – Dispute completeness of statement.  The Vice President seeks approval for major changes in PBS policy from the President or Board of Directors, as needed (Dickerson dep. p. 34; Defendant's Undisputed Fact 22).

Dispute sentence 2.  Tom Dickerson had immediate day to day supervision of non-physician employees of Clinical Radiologists (Dickerson dep. p. 25).  As Chief Executive Officer of Clinical Radiologists, he formulated and implemented labor policies for non-physician employees with the approval of the Executive Committee working through the Board of Directors, which policies would then be carried out based upon the approval of one or more of those entities (Dickerson dep. pp. 34-35; Defendant's Undisputed Fact 26).

19.     Dispute sentence 1.  Tom Dickerson was Vice President/Secretary of PBS (Dickerson dep. p. 6).

Dispute sentence 7.  Officers of PBS do not receive salary; PBS owners receive dividends (Dickerson dep. pp. 8-9).

Dispute sentence 8.  Admit that Tom Dickerson performed his duties as CEO of Clinical Radiologists and as Vice President/Secretary of PBS out of his home

office located in Quincy, Illinois (Dickerson Supp.Aff. 3); dispute inference that this office is an office of PBS or Clinical Radiologists.

Dispute paragraph 2, sentence 1. Dispute that the duties are specified. Typically Kim Sparrow would be utilized to assist with human resource type functions, explanation of benefits, those types of things (Dickerson dep. p. 40).

27.     Dispute sentence 2. Dispute that Fred Williamson had to obtain the approval of Tom Dickerson for the hiring of permanent staff. This misstates Dickerson's testimony on the cited pages in which Dickerson responds to a question about policies requiring Dickerson's approval (Dickerson dep. p. 28). Fred Williamson hired personnel to fill regular and temporary positions within the hiring budget without Dickerson's approval (Dickerson dep. p. 29; Dickerson Supp.Aff. 1). Tom Dickerson was not involved in recruiting, interviewing, selecting or hiring regular or temporary PBS employees for already budgeted positions (Dickerson Supp.Aff. 1).

Dispute sentence 3. Dispute that Fred Williamson's role at PBS consisted of hiring temporary workers and making sure that PBS employees came to work each day. Fred Williamson handled the supervision of employees, the operation of the billing office and also implemented PBS policy (Dickerson dep. pp. 21-22, 25, 30). Fred Williamson operated the billing office on a day to day basis at the level of a manager (Dickerson dep. pp. 21-22). Fred Williamson hired personnel to fill regular and temporary positions within the hiring budget without Dickerson's approval (Dickerson dep. p. 29; Dickerson Supp.Aff. 1). Fred Williamson recruited, interviewed, selected and hired PBS employees as well as supervised and disciplined them (Dickerson Supp.Aff. 1

4

and 2). Fred Williamson did not create labor policy on his own, that is, he did not create the "big picture rules" that governed PBS (Dickerson dep. pp. 30-31).

28.     Dispute sentence 1. Tom Dickerson was Vice President/Secretary of PBS (Dickerson dep. p. 6).

Dispute sentence 7. Officers of PBS do not receive salary; PBS owners receive dividends (Dickerson dep. pp. 8-9).

Dispute sentence 8. Admit that Tom Dickerson performed his duties as CEO of Clinical Radiologists and as Vice President/Secretary of PBS out of his home office located in Quincy, Illinois (Dickerson Supp.Aff. 3); dispute inference that this office is an office of PBS or Clinical Radiologists.

Dispute paragraph 2, sentences 1 and 2. Dispute that duties are specified. Typically Kim Sparrow would be utilized to assist with human resource type functions, explanation of benefits, those types of things (Dickerson dep. p. 40).

Dispute paragraph 3. (See Motion to Strike Portions of Affidavit of Karen Watkins.) Fred Williamson performed supervisory and managerial functions for PBS only. He never interviewed individuals who were applying for administrative staff positions or support staff positions at Clinical Radiologists. He did not participate in interviewing for Clinical Radiologists. He never sat in on any disciplinary action for Clinical Radiologists. He had no human rights or human resources type function for Clinical Radiologists. Fred Williamson only performed duties for Clinical Radiologists as a billing client of PBS (Dickerson dep. pp. 43-44; Defendant's Answer to Interrogatory No. 11).

29. Dispute sentence 1. Tom Dickerson was Vice President/Secretary of PBS (Dickerson dep. p. 6).

Dispute sentence 7. Officers of PBS do not receive salary; PBS owners receive dividends (Dickerson dep. pp. 8-9).

Dispute sentence 8. Admit that Tom Dickerson performed his duties as CEO of Clinical Radiologists and as Vice President/Secretary of PBS out of his home office located in Quincy, Illinois (Dickerson Supp.Aff. 3); dispute inference that this office is an office of PBS or Clinical Radiologists.

Dispute paragraph 2, sentences 1 and 2. Dispute that duties are specified. Typically Kim Sparrow would be utilized to assist with human resource type functions, explanation of benefits, those types of things (Dickerson dep. p. 40).

Dispute paragraph 6. (See Motion to Strike Portions of Affidavit of Karen Watkins.) Fred Williamson performed supervisory and managerial functions for PBS only. He never interviewed individuals who were applying for administrative staff positions or support staff positions at Clinical Radiologists. He did not participate in interviewing for Clinical Radiologists. He never sat in on any disciplinary action for Clinical Radiologists. He had no human rights or human resources type function for Clinical Radiologists. Fred Williamson only performed duties for Clinical Radiologists as a billing client of PBS (Dickerson dep. pp. 43-44; Defendant's Answer to Interrogatory No. 11).

30. Dispute sentence 1. Tom Dickerson was Vice President/Secretary of PBS (Dickerson dep. p. 6).

6

Dispute sentence 7. Officers of PBS do not receive salary; PBS owners receive dividends (Dickerson dep. pp. 8-9).

Dispute sentence 8. Admit that Tom Dickerson performed his duties as CEO of Clinical Radiologists and as Vice President/Secretary of PBS out of his home office located in Quincy, Illinois (Dickerson Supp.Aff. 3); dispute inference that this office is an office of PBS or Clinical Radiologists.

Dispute paragraph 2, sentences 1 and 2. Dispute that duties are specified. Typically Kim Sparrow would be utilized to assist with human resource type functions, explanation of benefits, those types of things (Dickerson dep. p. 40).

39. Dispute that Clinical Radiologists physician shareholders were subject to discipline by the Executive Committee. The cited reference does not support this fact. Action against a physician shareholder cannot be taken by the Executive Committee. Only the Board of Directors has this authority. Supplemental Affidavit of Charles E. Neal, M.D., paragraphs 4 and 5 (Neal Supp.Aff. 4 and 5).

40. Dispute that Clinical Radiologists physician shareholders were subject to discipline by the Executive Committee. The cited reference does not support this fact. Action against a physician shareholder cannot be taken by the Executive Committee. Only the Board of Directors has this authority. (Neal Supp.Aff. 4 and 5)

**4. Reply to Additional Material Facts**

PBS does not dispute Additional Material Facts 2 through 6, 9 through 22, 24 through 25, 27 through 28, 31, 36 through 38.

1. Dispute. Tom Dickerson was Vice President/Secretary of PBS (Dickerson dep. p. 6).

7.   Dispute. Officers of PBS do not receive salary; PBS owners receive dividends (Dickerson dep. pp. 8-9).

8.   Admit that Tom Dickerson performed his duties as CEO of Clinical Radiologists and as Vice President/Secretary of PBS out of his home office located in Quincy, Illinois (Dickerson Supp.Aff. 3); dispute inference that this office is an office of PBS or Clinical Radiologists.

23.   Dispute completeness of Fact 23. Clinical Radiologists is managed by a Board of Directors elected by the shareholders. The Board elects an Executive Committee to manage the day to day operations of Clinical Radiologists subject to the approval of the Board (Defendant's Undisputed Facts 21, 35, 37, 38, 39).

26.   Dispute completeness of Fact 26. Day to day employment and personnel issues with respect to non-physician employees of Clinical Radiologists are handled by Tom Dickerson, CEO of Clinical Radiologists, based upon the policy of the Board implemented by the Executive Committee of physicians which Dickerson then carries out (Dickerson dep. pp. 34-36).

29.   Dispute that Fred Williamson had to obtain the approval of Tom Dickerson for the hiring of permanent staff. This misstates Dickerson's testimony on the cited pages in which Dickerson responds to a question about <u>policies</u> requiring Dickerson's approval (Dickerson dep. p. 28). Fred Williamson hired personnel to fill regular and temporary positions within the hiring budget without Dickerson's approval (Dickerson dep. p. 29; Dickerson Supp.Aff. 1). Tom Dickerson was not involved in recruiting, interviewing, selecting or hiring regular or temporary PBS employees for already budgeted positions (Dickerson Supp.Aff. 1).

30. Dispute that Fred Williamson's role at PBS consisted of hiring temporary workers and making sure that PBS employees came to work each day. Fred Williamson handled the supervision of employees, the operation of the billing office and also implemented PBS policy (Dickerson dep. pp. 21-22, 25, 30). Fred Williamson operated the billing office on a day to day basis at the level of a manager (Dickerson dep. pp. 21-22). Fred Williamson hired personnel to fill regular and temporary positions within the hiring budget without Dickerson's approval (Dickerson dep. p. 29; Dickerson Supp.Aff. 1). Fred Williamson recruited, interviewed, selected and hired PBS employees as well as supervised and disciplined them (Dickerson Supp.Aff. 1 and 2). Fred Williamson did not create labor policy on his own, that is, he did not create the "big picture rules" that governed PBS (Dickerson dep. pp. 30-31).

32. Dispute completeness of statement. The Vice President seeks approval for major changes in PBS policy from the President or Board of Directors, as needed (Dickerson dep. p. 34; Defendant's Undisputed Fact 22).

33. Dispute completeness of sentence 1. Tom Dickerson formulated and implemented labor relations policies for non-physician employees with the approval of the Executive Committee working through the Board of Directors, which policies would then be carried out based upon the approval of one or more of those entities (Dickerson dep. pp. 34-36).

34. Dispute that the duties are specified. Typically Kim Sparrow would be utilized to assist with human resource type functions, explanation of benefits, those types of things (Dickerson dep. p. 40).

35. Dispute that the duties are specified. Typically Kim Sparrow would be utilized to assist with human resource type functions, explanation of benefits, those types of things (Dickerson dep. p. 40).

## II. Argument

### B. Integrated Employer

In the "common management" section of her Memorandum (pp. 19-20), Plaintiff argues that Dickerson was the real manager of PBS. This is not supported by the facts. Although Dickerson exercised oversight responsibility at PBS, the facts show that it was Fred Williamson, not Dickerson, who on a day to day basis hired and managed the employees, implemented policy and supervised the operation of the billing service (Dickerson dep. pp. 21-22, 28-30; Dickerson Supp.Aff. 1). Williamson had control of the employees and business operations on a day to day basis within the operational framework set by the owners. The fact that Fred Williamson did not set "big picture" policy on his own does not diminish his role as the manager. General policies are usually set by owners [("Normal incidents of ownership, however, include the right to set general policies". *Lusk v. Foxmeyer Health Corp.,* 129 F.3d 773, 778 (5th Cir. 1997)]. Dickerson's role of setting policy (on behalf of and as one of the owners) did not transform him into the "real" manager of PBS.

Dickerson's role at Clinical Radiologists was clearly different from his role at PBS. At PBS, Williamson supervised all of the employees on a day to day basis; at Clinical Radiologists, Dickerson supervised the nine non-physician employees (out of 37) on a day to day basis (Dickerson dep. p. 25). At PBS, Williamson managed the day to day business operations; Dickerson managed the day to day business operations of

10

Clinical Radiologists (Dickerson dep. pp. 8-9, 21-22). Dickerson's oversight responsibility at PBS was that of an owner, while his role at Clinical Radiologists was as an employee whose duties were to manage the business operations and supervise less than a quarter of the employees.

In her argument regarding "interrelationship between operations" (Memorandum pp. 21-22), Plaintiff ignores the separation of PBS and Clinical Radiologists in every aspect of their operations. Instead, Plaintiff argues that Clinical Radiologists and PBS are interrelated because Tom Dickerson is an owner of one entity and an employee of the other, because Dickerson receives no salary from PBS, because Dickerson performed duties for both entities from his home office in Quincy, and because Dickerson had duties assigned to him related to PBS when he was hired as CEO of Clinical. None of these facts, however, show interrelated operations. Dickerson's work from his home office does not transform it into a common work site. Although Dickerson is not compensated for his role as Vice President/Secretary, there is no requirement that officers be compensated for work performed; Dickerson's compensation from PBS is in the form of monthly dividends received by PBS shareholders. Nor is the use of an executive employee for an oversight role in another company sufficient to show that the operations are interrelated. Courts have recognized that practices such as the use of common human resources are not unusual in today's business climate and are not indicative of an integrated employer relationship. *Cruz-Lovo v. Ryder System Inc.,* 298 F.Supp. 2d 1248, 1253-4 (S.D. Fla. 2003) and cases cited therein. The evidence in this case shows that PBS is in the business of providing billing services for medical groups, that Clinical Radiologists is in the business of providing radiology services, that each entity is

11

organized and run separately to provide its own respective services, and that the two entities are not interrelated (Motion for Summary Judgment pp. 13-14).

In support of her argument that there is centralized control of labor relations, Plaintiff again focuses primarily on Tom Dickerson (Memorandum p. 22). Defendant adopts its arguments in the preceding paragraphs in response to these arguments.

Plaintiff further argues that there is a disputed issue of fact as to whether Fred Williamson, Plaintiff's immediate supervisor at PBS, also performed supervisory and managerial functions for Clinical Radiologists (Memorandum pp. 21-23). In paragraph 5 of Plaintiff's Affidavit, she alleges that Williamson also performed "supervisory and managerial functions for Clinical Radiologists and University" and that he interviewed, hired and discharged employees for PBS, Clinical Radiologists and University. However, Plaintiff's conclusory allegations on this issue are insufficient to create an issue of material fact. Plaintiff's Affidavit consists of broad statements about two groups of radiologists, one of which she cannot even correctly name. Plaintiff has not alleged any concrete facts to support her allegations regarding supervision or management of Clinical Radiologists. An affidavit submitted in opposition to a motion for summary judgment must "show affirmatively" that the affiant is competent to testify to those matters. Fed.R.Civ.Pro. 56(e). Statements not based upon personal knowledge must be disregarded. To survive summary judgment, "nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient (citations omitted)." *Murray v. City of Sapulpa,* 45 F.3d 1417, 1422 (10th Cir. 1995). Plaintiff's Affidavit does not

explain why or upon what basis she would have any personal knowledge of the management or supervision of two groups of radiologists.

The Seventh Circuit has repeatedly stated that conclusory statements, unsupported by evidence of record, are insufficient to avoid summary judgment. *Albiero v. City of Kankakee,* 246 F.3d 927, 932-933 (7th Cir. 2001). The Court has stated that Rule 56 demands something more than the bald assertion of a general truth of a particular matter. Rather, "it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted" (citation and quotation marks omitted). *Ibid.* Plaintiff's unsupported allegations about Fred Williamson's role at Clinical Radiologists (and University) are insufficient to establish the existence of a genuine issue of material fact with respect to the management of Clinical Radiologists (or University). As the court stated in *Palucki v. Sears Roebuck & Co.,* 879 F.2d 1568, 1572 (7th Cir. 1989), "a party to a lawsuit cannot ward off summary judgment with an affidavit or deposition based on rumor or conjecture."

On p. 26 of her Memorandum, Plaintiff cites *Smith v. Allen Health Systems, Inc.*, 2001 WL 34148915 (N.D. Iowa 2001) to support her argument that there is a genuine issue of material fact. *Smith* is based upon the facts of that case which the court does not detail in its opinion; however, the court generally recites that the three companies had common management, common labor relations, one office, consolidated administrative functions, and consolidated operations as well as common ownership and financial control. Those are not the facts before this Court in this case. Here, as in *Lusk v. Foxmeyer Health Corporation,* 129 F.3d 773 (5th Cir. 1997), *Johnson v. Flowers Industries, Inc.,* 814 F.2d 978 (4th Cir. 1987), *Cruz-Lovo v. Ryder System, Inc.,* 298

F.Supp.2d 1248 (S.D. Fla. 2003) and *Frank v. U.S. West, Inc.,* 3 F.3d 1357 (10th Cir. 1993)*,* applying the integrated employer test to PBS and Clinical Radiologists establishes that summary judgment should be granted because there is no genuine issue of material fact concerning whether the two corporations should be considered a single entity and that as a matter of law Plaintiff cannot show that PBS is an employer subject to the FMLA.

**C. PBS and Clinical Radiologists do not jointly employ 50 employees.**

Contrary to Plaintiff's assertion on pp. 28-29, only termination of *shareholder* radiologists of Clinical Radiologists requires a 2/3 vote by the corporation's Board of Directors (Defendant's Undisputed Fact 39; Neal Affidavit, par. 13).

Plaintiff asserts on p. 29 of her Memorandum that having the Executive Committee handle patient complaints shows that Clinical Radiologists supervises the work of its shareholder physicians.  However, handling patient complaints is not an aspect of supervision.  The radiologists in this group are all practicing physicians licensed to practice medicine.  The existence of a process to handle patient complaints is part of the normal business operation of a medical group.  This process does not permit an inference that a shareholder physician is supervised.

As she does throughout her Memorandum, on p. 30 Plaintiff again uses "manages" in the broadest sense when, in fact, it was used to describe a limited day to day function.  The Executive Committee handles the day to day matters involving physicians at Clinical Radiologists.  The Executive Committee does not create the broad policies that govern Clinical Radiologists; that is the role of the Board of Directors (Plaintiff's Undisputed Facts 21, 25, 37, 38).

## Conclusion

Wherefore, Defendant Professional Business Services of Central Illinois, Inc. respectfully requests that this Court enter judgment in favor of Defendant as to Counts I and II of Plaintiff's Complaint.

          Respectfully Submitted,

          PROFESSIONAL BUSINESS SERVICES
          OF CENTRAL ILLINOIS, INC., Defendant

          s/Gerri Papushkewych
          Gerri Papushkewych, Bar No. 11240
          Attorney for Defendant
          Wolfson & Papushkewych LLP
          2904 Greenbriar Drive, Suite D
          Springfield, IL  62704
          Telephone:  (217)787-3210
          Telefax:  (217)787-1752
          E-mail:  gerrip@wpllplaw.com

CERTIFICATE OF SERVICE

      I hereby certify that on January 17, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Bradley B. Wilson  
Gates, Wise & Schlosser, P.C.  
1231 South Eighth Street  
Springfield, IL  62703

                s/Gerri Papushkewych  
                Gerri Papushkewych, Bar No. 11240  
                Attorney for Defendant  
                Wolfson & Papushkewych LLP  
                2904 Greenbriar Drive, Suite D  
                Springfield, IL  62704  
                Telephone:  (217)787-3210  
                Telefax:  (217)787-1752  
                E-mail:  gerrip@wpllplaw.com