**E-FILED**
Friday, 11 February, 2005  09:24:26 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| KAREN WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  03-3283 |
| | ) | |
| PROFESSIONAL BUSINESS | ) | |
| SERVICES OF | ) | |
| CENTRAL ILLINOIS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on the Defendant Professional Business Services of Central Illinois, Inc.'s (PBS) Motion for Summary Judgment (d/e 29).  The parties have effectively briefed their positions; therefore, PBS's Request for Oral Argument (d/e 30) is denied.  The Plaintiff Karen Watkins asserts claims for violations of the Family Medical Leave Act (FMLA).  29 U.S.C. § 2601 et seq.  PBS argues that it is not subject to the FMLA because it employed fewer than 50 employees during the relevant time period.  Each party has filed a motion to strike some of the other party's submissions.  The Court will address those motions below.  The

evidence not stricken establishes that PBS had fewer than 50 employees and so was not subject to the FMLA. The Motion for Summary Judgment is therefore allowed.

## STATEMENT OF FACTS

According to the Complaint, Watkins worked for PBS from June 6, 2000, until May 6, 2003. In April 2003, Watkins was diagnosed with renal cell carcinoma and underwent surgery. She was released from the hospital on April 25, 2003. She asked PBS to grant her leave under the FMLA to cover her continued absence from work as she recovered from surgery. She alleges that PBS refused to do so and fired her for absenteeism on May 6, 2003. She asserts claims against PBS for violating the FMLA.

PBS is an Illinois corporation organized under the Illinois Business Corporation Act of 1983. PBS provides billing services to physicians and physician groups, including a medical services corporation called Clinical Radiologists, S.C. (Clinical Radiologists). As of May 1, 2003, PBS listed 19 employees on its payroll. PBS's offices were located at 944 North First Street, Springfield, Illinois. Defendant's Motion for Summary Judgment (d/e 29) (Defendant's Motion), at 2-3, Statement of Undisputed Facts

(Defendant's Statement of Facts), ¶¶ 1-3, 17.[1]

PBS complied with all the legal formalities required for the establishment and maintenance of a corporation. It adopted its own articles of incorporation and bylaws. PBS filed its own corporate annual reports with the Illinois Secretary of State, held annual meetings and other meetings of its Board of Directors and shareholders as required or necessary, maintained a current minute book of its corporate activities and otherwise complied with the statutory requirements. Id. at ¶ 3.

As of May 1, 2003, PBS had 15 shareholders. All of the shareholders were on PBS's Board of Directors. Darrel R. Anderson, M.D., was President of PBS, a shareholder and member of the Board. Thomas C. Dickerson was a shareholder, member of the Board, and PBS's Vice President/Secretary. Id. at ¶24; Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (d/e 32) (Plaintiff's Memorandum), at 12, Statement of Additional Material Undisputed Facts (Plaintiff's Statement of Facts), ¶¶ 13-17.

Twelve of the 15 PBS shareholders were physicians who were also

---

[1]All references to either party's Statements of Undisputed Facts are to facts that both parties admit are undisputed.

shareholders of Clinical Radiologists, including PBS President Anderson. These 12 individuals owned approximately 130,000 of the 144,500 outstanding shares of PBS. These 12 shareholders also owned a majority of the outstanding stock in Clinical Radiologists. In addition, PBS Vice President/Secretary Dickerson was employed by Clinical Radiologists as its Chief Executive Officer (CEO). Plaintiff's Statement of Facts, ¶¶ 10-12.

Clinical Radiologists is a medical service corporation organized under the Illinois Medical Services Corporation Act. The Medical Services Corporation Act requires that only physicians can be shareholders of the corporation, and the corporation must be managed by physicians. As of May 1, 2003, Clinical Radiologists had 28 shareholders, all of whom were physicians specializing in radiology, including the 12 who owned stock in PBS. Clinical Radiologists listed 37 employees on its payroll, including its 28 radiologist shareholders. Clinical Radiologists' offices are located at 701 North First Street, Springfield, Illinois, inside the Memorial Medical Center. Defendant's Statement of Facts, ¶¶ 4-7, 17.

Clinical Radiologists complied with all the legal formalities required for the establishment and maintenance of a medical services corporation. It adopted its own articles of incorporation and bylaws. Clinical

Radiologists filed its own corporate annual reports with the Illinois Secretary of State, held annual meetings and other meetings of its Board of Directors and shareholders as required or necessary, maintained a current minute book of its corporate activities and otherwise complied with statutory requirements. Id. at ¶ 7.

As of May 1, 2003, Clinical Radiologists' management structure consisted of a Board of Directors and an Executive Committee. Clinical Radiologists' 28 shareholders elected 15 of its fellow shareholders to its Board of Directors. The 15 member Board then elected five of its members to an Executive Committee. The Executive Committee managed the day-to-day operations of Clinical Radiologists, subject to approval of the Board. The Board could, by a two-thirds vote: (1) reverse any decision of the Executive Committee affecting physician employees' terms and conditions of employment; (2) reassume any right to act which had been granted to the Executive Committee; and (3) discontinue the existence of the Executive Committee. As of May 2003, 11 of the 15 members of Clinical Radiologists' Board of Directors were also members of PBS' Board of Directors, including Darrel Anderson. The five members of the Executive Committee were all on the Board of PBS, including Anderson. Defendant's

Statement of Facts ¶¶ 21, 35-38; Plaintiff's Statement of Facts ¶¶ 21, 25;

Defendant's Motion, attached Affidavit of Charles E. Neal, M.D. (Neal

Affidavit), ¶¶ 13-15.

Clinical Radiologists provided radiology services to various hospitals

and other medical facilities.  Clinical Radiologists set the work schedules for

its physician shareholder/employees to ensure that a radiologist was on duty

at all times necessary to meet Clinical Radiologists' obligations at each

medical facility for which it provided services.  Patient complaints were

referred to the Executive Committee.  The Executive Committee

furthermore could make a recommendation to the Board whether a

radiologist/shareholder employee should be disciplined.  The Board of

Directors determined whether to impose any discipline.  The Board of

Directors could terminate a physician's employment at Clinical Radiologists

by a two-thirds vote.  Neal Affidavit, ¶¶ 6, 11; Defendant's Reply to

Plaintiff's Response to Defendant's Motion for Summary Judgment (d/e 35)

(Defendant's Reply), attached Supplemental Affidavit of Charles E. Neal,

M.D. (Neal Supplemental Affidavit), ¶¶ 2-5.

The radiologist employee/shareholders shared in the profit and losses

of Clinical Radiologists.  The Board of Directors set the criteria for

6

compensation.   By law, Clinical Radiologists had to satisfy all of its obligations before distributing funds to shareholders.   If a shareholder received payments in excess of the amount to which he or she was entitled, the shareholder had to re-pay the excess to the corporation.   The revenue distribution policy adopted by Clinical Radiologists was substantially equivalent to revenue distribution policies adopted by many partnerships. Defendant's Statement of Facts, ¶¶ 41-47.

PBS and Clinical Radiologists each filed its own state and federal tax returns and paid its own taxes.   For tax purposes, Clinical Radiologists was a personal service corporation while PBS was an S corporation.   Each corporation had its own separate bank accounts, wrote its own checks and paid its own bills.   Each corporation was responsible for its own payroll. Each corporation had its own accounting system and prepared its own financial statement.   Each corporation entered into contracts and lease agreements separately on its own behalf.   Each corporation occupied its own office space, owned or leased its own equipment, and purchased its own supplies.   Id., ¶¶ 10-15; Neal Affidavit, ¶ 8; Defendant's Motion, attached Affidavit of Thomas Dickerson (Dickerson Affidavit), ¶ 7.

Each corporation had its own employees.   Employees did not transfer

between corporations; however, Clinical Radiologists' employee Kim Sparrow provided services to PBS in connection with human resource functions, including explaining benefits to PBS employees. PBS paid for Sparrow's time in performing these services. Sparrow, however, was only listed as an employee of Clinical Radiologists. <u>Dickerson Affidavit</u> ¶ 10; <u>Defendant's Motion</u>, attached <u>Deposition of Thomas Dickerson (Dickerson Deposition)</u>, at 39-42; <u>Plaintiff's Statement of Facts</u> ¶¶ 34-38.

Dickerson performed duties as both Vice President/Secretary of PBS and CEO of Clinical Radiologists. His initial employment contract as Clinical Radiologists' CEO stated that he would perform duties at PBS. He performed his duties for both corporations out of an office in his home in Quincy, Illinois. As Clinical Radiologists' CEO, he managed the day-to-day operations of the non-physician employees of Clinical Radiologists. He was responsible for all personnel and labor decisions with respect to those employees, subject to approval of the Board of Directors and Executive Committee. His annual salary as CEO of Clinical Radiologists, excluding bonuses, was $175,000.00. As PBS Vice President/Secretary, Dickerson approved all labor and personnel policies for PBS. PBS had a manager at its 944 North First Street office in May 2003, named Fred Williamson.

Williamson managed the office on a day-to-day basis, subject to Dickerson's oversight. Dickerson, in turn, reported to PBS President Anderson and the PBS Board. According to Dickerson, Williamson could not fire any employee without Dickerson's approval; however, Watkins states in her affidavit that Williamson hired and fired employees at PBS. Dickerson received no salary from PBS for the services he performed for PBS. He did, however, receive profits as a shareholder of PBS. <u>Defendant's Reply</u>, attached <u>Supplemental Affidavit of Thomas Dickerson (Supplemental Dickerson Affidavit)</u>, ¶¶ 1, 3; <u>Plaintiff's Statement of Facts</u> ¶¶ 5, 6, 8, 17, 18; <u>Defendant's Memorandum</u>, attached <u>Affidavit of Karen Watkins</u> ¶ 5; <u>Dickerson Deposition</u>, at 9.

<u>MOTIONS TO STRIKE</u>

PBS moves to strike portions of an affidavit of Karen Watkins. <u>Motion to Strike Portions of Affidavit of Karen Watkins (d/e 36)</u>. Paragraphs 2, 3, 5 and 6 of Watkins' affidavit state the following:

> 2.   PROFESSIONAL BUSINESS SERVICES was, and is, owned by William D. Moore, M.D.
>
> 3.   Dr. Moore and PROFESSIONAL BUSINESS SERVICES also own two other business entities, Clinical Radiologists in Springfield, Illinois, and an entity known as "University" located at Memorial Medical Center in

9

Springfield, Illinois.

. . . .

5.   During my employment with PROFESSIONAL
BUSINESS SERVICES, Fred Williamson, my immediate
supervisor at PROFESSIONAL BUSINESS SERVICES,
also performed supervisory and managerial functions for
Clinical Radiologists and University.  For example, it was
Mr. Williamson who interviewed, hired and discharged
employees whether they worked for PROFESSIONAL
BUSINESS SERVICES, Clinical Radiologists or
University.

6.   During my employment with PROFESSIONAL
BUSINESS SERVICES, employees for PROFESSIONAL
BUSINESS SERVICES, Clinical Radiologists and
University were paid with checks that appeared to be
drawn from the same account.

Plaintiff's Memorandum, Exhibit A, Affidavit of Karen Watkins, ¶¶ 2-3,5-6.

PBS moves to strike all these paragraphs because the statements are not

based on Watkins' personal knowledge.  Watkins has no objection to

striking paragraphs 2 and 3, and she does not respond to PBS's objections

to paragraph 6.  Paragraphs 2 and 3 are stricken.  Paragraph 6 only states

that checks appear to be drawn on the same account and so is stricken as

speculation.

Watkins avers in paragraph 5 that Williamson interviewed, hired, and

discharged employees at all three of these business entities.  She also makes

a conclusionary statement that Williamson performed "supervisory and managerial functions" at all three of these business entities. Watkins, however, only worked at PBS. She does not provide any foundation to demonstrate how she had personal knowledge of what Williamson did or did not do at Clinical Radiologists and the unknown entity called University. The Court therefore will strike Watkins' statements about Williamson's activities at Clinical Radiologists and University, but will not strike her statements about Williamson's duties at PBS while Watkins was working there.

Watkins moves to strike a supplemental affidavit from Thomas Dickerson. <u>Motion to Strike Supplemental Affidavit of Thomas C. Wilkerson (d/e 38)</u>.[2] Dickerson's deposition transcript includes the following question and answer:

> Q: Okay. And hiring and firing, those policies we just discussed, those are things he [Williamson] had to get your approval for?

> A: Within the budget of hiring he could hire a personnel, particularly temporary personnel, to fill voids within the day-to-day operations, but terminations would come through me for permanent employees.

---

[2]The title of the Motion incorrectly identifies Dickerson as Thomas Wilkerson.

11

Dickerson Deposition, at 29.  Dickerson states in his supplemental affidavit:

> 1.    My testimony during my deposition may have left an impression that Fred Williamson, Billing Operations Manager for Professional Business Services of Central Illinois, Inc. ("PBS"), required my approval to hire regular PBS employees.  The fact is that I was not involved in recruiting, interviewing, selecting or hiring regular or temporary PBS employees.  Those functions were performed by Fred Williamson.  Williamson did not require my approval to hire either regular or temporary PBS employees; my approval was only required for the creation of new positions which were not already budgeted.

Supplemental Dickerson Affidavit, ¶ 1.  Watkins contends that Dickerson's supplemental affidavit contradicts his deposition testimony and so must be disregarded.  The affidavit does not contradict the deposition testimony.  The deposition testimony states that Williamson could hire personnel, particularly temporary personnel.  This statement is ambiguous regarding whether Williamson could hire permanent employees.  The affidavit clarifies this ambiguity.  The Court denies the motion to strike the supplemental affidavit of Dickerson.

<u>ANALYSIS</u>

A.    <u>Introduction</u>

Watkins asserts her claim based on PBS's violations of the FMLA. PBS moves for summary judgment because it is not subject to the FMLA. At summary judgment, PBS must present evidence that demonstrates the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to Watkins. Any doubt as to the existence of a genuine issue for trial must be resolved against PBS. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). Once PBS has met its burden, Watkins must present evidence to show that issues of fact remain with respect to an issue essential to her case, and on which she will bear the burden of proof at trial. <u>Celotex Corp.</u>, 477 U.S. at 322; <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

The FMLA only applies to employers that employee 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding year. 29 U.S.C. § 2610. It is undisputed that PBS never had 50 employees while Watkins worked there from 2000 to 2003. Thus, PBS is only subject to the FMLA if it can be viewed as part

13

of a larger, single entity for purposes of the FMLA.  Watkins argues that PBS and Clinical Radiologists are a single entity for purposes of the FMLA, and that single entity employed more than 50 employees.  PBS asserts PBS and Clinical Radiologists are not a single entity, and that even if they were considered a single entity, the combined entity did not employ 50 employees for purposes of the FMLA.  As explained below, the undisputed facts support PBS's position.

B.    <u>Integrated Employer</u>

This Court previously determined that the "integrated employer" test set forth in the Department of Labor regulations is the appropriate legal standard to use to analyze whether PBS and Clinical Radiologists are a single entity under the FMLA.  <u>Order entered March 10, 2004 (d/e 14)</u>, at 6-9.  Those regulations set forth a four part test to determine whether multiple entities are a single employer:

> Separate entities will be deemed to be parts of a single employer for purposes of FMLA if they meet the "integrated employer" test.  Where this test is met, the employees of all entities making up the integrated employer will be counted in determining employer coverage and employee eligibility.  A determination of whether or not separate entities are an integrated employer is not determined by the application of any single criterion, but rather the entire relationship is to be reviewed in its totality. Factors considered in determining whether two or more entities

14

are an integrated employer include:

(i)     Common management;

(ii)    Interrelation between operations;

(iii)   Centralized control of labor relations; and

(iv)    Degree of common ownership/financial control.

29 C.F.R. § 825.104(c)(2).

The Seventh Circuit used the integrated employer test in the case of

Rogers v. Sugar Tree Products, Inc., to determine whether two companies

with common ownership were a single employer for purposes of the Age

Discrimination and Employment Act (ADEA). Rogers, 7 F.3d 577, 583 (7th

Cir. 1993). The Seventh Circuit has since adopted a different test for

determining single employer status for anti-discrimination statutes such as

the ADEA. See Papa v. Katy Industries, Inc., 166 F.3d 937 (7th Cir. 1999).

The Rogers opinion, however, explains how the integrated employer test

should be applied in this case.

The Rogers Court stated that, "The showing required to warrant a

finding of single employer status has been described as 'highly integrated

with respect to ownership *and* operations.'"  Rogers, 7 F.3d at 583

(emphasis in the original), quoting McKenzie v. Davenport-Harris Funeral

Home, 834 F.2d 930, 933 (11th Cir. 1987).  The Rogers Court stated that:

> the most important requirement is that there be a sufficient
> indicia of an interrelationship between the immediate corporate
> employer and the affiliated corporation to justify the belief on
> the part of an aggrieved employee that the affiliate corporation
> is jointly responsible for the acts of the immediate employer.
> When such a degree of interrelatedness is present, we consider
> the departure from the "normal" separate existence between
> entities an adequate reason to view [one corporation's] conduct
> as that of both.

Rogers, 7 F.3d at 583, quoting Armbruster v. Quinn, 711 F.2d 1332, 1337
(6th Cir. 1983).

Common ownership, alone, typically is insufficient to find that two
entities are a single employer.  Id.  Rather, the other factors in the integrated
employer test must demonstrate that the two entities are so highly
integrated as to appear to be a single entity to their employees.  The Rogers
Court gave two contrasting examples.  In one case, two corporations owned
by a single individual were considered a single employer because the two,
"were so interrelated that 'except for the name printed on their paychecks,
[employees] were not even sure which entity employed them or their
coworkers.'" Rogers, 7 F.3d at 583, quoting E.E.O.C. v. Arlington Transit
Mix, Inc., 734 F.Supp. 804, 807 (E.D. Mich. 1990), rev'd on other grounds,
957 F.2d 219 (6th Cir. 1991).  In another case, two subsidiaries owned by

16

the same parent were not considered a single employer even though they shared certain high-level management and some employees performed functions for both corporations. <u>Rogers</u>, 7 F.3d at 583, <u>citing</u> <u>Kelber v. Forest Elec. Corp.</u>, 799 F.Supp. 326, 331 (S.D.N.Y. 1992). The two subsidiaries were not considered a single employer because they maintained separate field operations.

In applying these principles to the facts in <u>Rogers</u>, the Seventh Circuit upheld the District Court's finding that two commonly owned companies were not a single employer even though one individual owned both companies, and another individual was involved in the management of both companies. <u>Rogers</u>, 7 F.3d at 583-84. The two companies maintained separate records, plants, equipment, and facilities. One was located in Illinois and the other was located in Missouri. The two companies purchased, processed, or stored each other's products, but did so through arms-length transactions. <u>Id.</u>

The evidence presented in this case fails to demonstrate that PBS and Clinical Radiologists are so highly integrated that they should be considered a single employer under the Seventh Circuit's analysis in <u>Rogers</u>. The two entities have some common ownership, but not completely common

17

ownership; three of PBS's 15 shareholders did not own Clinical Radiologists stock, and 14 of Clinical Radiologists' 28 shareholders did not own PBS stock. The two corporations were engaged in different businesses: Clinical Radiologists provided physician services; PBS provided billing services to Clinical Radiologists and other physician groups. The businesses maintained separate offices, employees, accounts, corporate books, financial records, and bank accounts. Sparrow provided some human resource services to both companies, but integration of some human resource functions is not enough to show a highly integrated organization. Id. at 583. See Lusk v. Foxmeyer Health Corp., 129 F.3d 773, 778-79 (5th Cir. 1997) (corporations were not a single employer even though both corporations shared the same human resources department).

PBS and Clinical Radiologists had common directors, and Dickerson was a common manager of both companies. He controlled the decision to fire employees in both companies. Watkins was fired when she wanted leave benefits under the FMLA; Williamson could not fire her without Dickerson's approval. Thus, Dickerson controlled the key personnel decision at issue in this case. The integrated employer analysis should focus on precise employment action at issue in the case. Lusk, 129 F.3d at 777.

The existence of common directors and Dickerson's double duty as Vice President/Secretary of PBS, and CEO of Clinical Radiologists, however, do not show that PBS and Clinical Radiologists were so highly integrated, "to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer." Rogers, 7 F.3d at 583.  Corporate directors and officers often "can and do 'change hats' to represent the two corporations separately, despite their common ownership." Lusk, 129 F.3d at 779.  See Frank v. U.S. West, Inc., 3 F.3d 1357, 1364 (10th Cir. 1993) and cases cited therein (common managers and directors not sufficient to make corporations single employers).  The fact that Dickerson exercised his authority as Vice President/Secretary of PBS to approve of Watkins' firing does not show that he was acting on behalf of Clinical Radiologists when he took that action. Lusk, 129 F.3d at 778-79 (two corporations were not a single employer even though three individuals who made personnel decisions held management positions in both corporations).  The evidence is insufficient to show that the two corporations should be considered a single employer.

Watkins relies on one unpublished order from the Northern District of Iowa to support her position.  Smith v. Allen Health Systems, Inc., 2001

WL 34148915 (N.D. Iowa 2001). The unpublished order provides scant factual detail. The limited facts set forth in Smith, however, show that the entities there were more highly integrated than PBS and Clinical Radiologists. The entities were located in the same hospital, shared consolidated administrative functions and had the same management. PBS and Clinical Radiologists did not share the same offices or have consolidated administrative functions. The Smith case is not applicable. The two corporations were not a single employer for purposes of the FMLA.

THEREFORE, Professional Business Services of Central Illinois Inc.'s Motion for Summary Judgment (d/e 29) is ALLOWED. Summary judgment is entered in favor of Defendant Professional Business Services of Central Illinois Inc. and against Plaintiff Karen Watkins. Defendant's Request for Oral Argument (d/e 30) is DENIED. Defendant's Motion to Strike Portions of the Affidavit of Karen Watkins (d/e 36) is ALLOWED in part, as set forth in this Order. Plaintiff's Motion to Strike Supplemental Affidavit of Thomas C. Wilkerson (d/e 38) is DENIED. All other pending motions are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER: February 10, 2005.

FOR THE COURT:

_____s/  Jeanne E. Scott_____
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE